COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Moon, Judges Barrow[*] and Coleman
Argued at Salem, Virginia


BARRY M. LEW

v.          Record No. 2146-94-3          OPINION BY
                                   JUDGE SAM W. COLEMAN III
COMMONWEALTH OF VIRGINIA                   MAY 16, 1995


          FROM THE CIRCUIT COURT OF THE CITY OF SALEM
                 Kenneth E. Trabue, Judge

          A. Kristin Shandor for appellant.

          Robert B. Condon, Assistant Attorney General
          (James S. Gilmore, III, Attorney General;
          Ronald P. Geiersbach, Assistant Attorney
          General, on brief), for appellee.



     In this criminal appeal, we hold that the evidence was

sufficient to prove the corpus delicti for grand larceny and to

prove that the defendant was the criminal agent.

          "The rule in criminal cases is that the
          coincidence of circumstances tending to
          indicate guilt, however strong and numerous
          they may be, avails nothing unless the corpus
          delicti, the fact that the crime has been
          actually perpetrated, be first established.
          So long as the least doubt exists as to the
          act there can be no certainty as to the
          criminal agent."


Maughs v. City of Charlottesville, 181 Va. 117, 121, 23 S.E.2d

784, 786 (1943) (quoting Poulos v. Commonwealth, 174 Va. 495,

500, 6 S.E.2d 666, 667 (1940)).

          [The] corpus delicti [must] be proved before
          any inference of guilt can arise from the

---

[*] Judge Bernard G. Barrow participated in the hearing and decision of this case and prepared his dissent prior to his death.

possession of the fruits of the crime. Where the charge is . . . larceny, the corpus delicti is the larceny of the goods. . . . [T]he possession of goods [will not] give rise to an inference of guilt until the corpus delicti charged be proved by other evidence.

Drinkard v. Commonwealth, 163 Va. 1074, 1082-83, 178 S.E. 25, 28 (1935).

The crime of larceny requires proof that the property of another has been stolen--that is, taken unlawfully with the intent to permanently deprive the owner of the possession thereof. See Maughs, 181 Va. at 121, 23 S.E.2d at 786. Evidence offered to prove the corpus delicti in a trial for larceny is insufficient where the evidence fails to prove that property has been stolen from another or where property found in the accused's possession cannot be identified as having been stolen. Id. at 121, 23 S.E.2d at 786. The critical questions are whether the evidence proved that copper bus bars found in the defendant's possession were the property of General Electric (GE) and that they were stolen.

The evidence proved that at approximately 11:00 p.m. on the roadway adjacent to the GE plant, a police officer came upon the defendant. Nine copper bus bars were protruding from the trunk and through the back windows of the defendant's automobile. The defendant said that he had found the copper beside the road.

The bus bars were ten and twelve-foot lengths of copper, which varied in three dimensions between three-eighths by one and

three-quarter inches to three-eighths by three inches in width and diameter, and weighed between approximately forty to fifty pounds each. Copper bus bars matching these dimensions had been fabricated for GE. Although somewhat unique, copper bus bars with similar dimensions are fabricated for and are not uncommon in other industries. Some of GE's bus bars were also unique because they had rounded edges, as did some of the bus bars in the defendant's possession.

Immediately after observing the copper in the defendant's possession, a police officer inspected a GE storage bin of copper bus bars located just inside GE's fence near where defendant was first seen. The stockpile of copper bus bars had a shiny area on top, surrounded by a tarnished area where the copper had begun to oxidize. From the shiny area, it appeared that copper bus bars had been recently removed from the stockpile. The copper found in the defendant's possession was also shiny in certain areas, as though it had been protected, and tarnished in others, where it had been exposed. The officer measured the bus bars that the defendant had in his possession and they appeared to correspond to the shiny area on the stockpile.

The defendant was employed by a roofing contractor who worked at the GE plant. He had a security pass that allowed him to enter the GE premises.

The security fence near the copper storage bin was constructed in such a manner that a gap existed that would allow

someone to pass bus bars through the fence.  Inventories from GE showed that the three dimensions of copper bus bars that were found in the defendant's possession corresponded to dimensions of copper bus bars that GE had maintained in inventory.[1]  Although some discrepancy existed between the weight of copper that GE reported missing from its inventory and the weight of the copper that the defendant returned to GE, the evidence showed that at least one hundred and thirty-three pounds of copper was missing according to GE's inventory.[2]

> "It is not necessary that the identity of stolen property should be invariably established by positive evidence.  In many such cases identification is impracticable, and yet the circumstances may render it impossible to doubt the identity of the property, or to account for the possession of it by the accused upon any reasonable hypothesis consistent with his innocence."

Gravely v. Commonwealth, 86 Va. 396, 402, 10 S.E. 431, 433 (1889)

---

[1] One bus bar which the defendant returned to GE measured three inches by three-eighths inches in width and diameter.  GE's inventory showed that bus bars of this dimension had not been in inventory since before 1991.  However, when officers went to the defendant's residence to recover the copper, he had more copper than what the officer had observed in his automobile.

[2] Although GE's inventory showed the dimensions of the bus bars that it had in stock, at trial GE only attempted to account for its missing inventory by weight, not by a specific number of bus bars of a certain dimension.  Furthermore, as to the evidence concerning the weight of copper missing from inventory, the record was unclear whether the figure given included the bus bars that had been returned to GE from the defendant or the total weight that was missing from inventory. At best, the inventory showed that GE had a quantity of copper missing that it could not account for, but the weight did not correspond to the weight of the copper that the defendant returned to GE.

(quoting William Wills, The Principles of Circumstantial Evidence 130 (3d ed. 1862)).

Considering the unique nature of the copper bus bars, the circumstances under which they were found in the defendant's possession, their location next to the GE plant and in close proximity to a storage bin containing similar bus bars, the time of day at which the defendant was transporting them, the matching distinctive shiny and tarnished colorations between the stockpiled copper and that possessed by the defendant, the gap in the fence enabling the copper to be removed from GE's property, and the fact that GE had copper of these dimensions missing from its inventory, the evidence is sufficient to identify the copper found in the defendant's possession as belonging to GE and to prove that it was stolen.

We reject the defendant's argument that the holding in Maughs controls this case. In Maughs, the evidence failed to prove that any of the large number of railroad tie plates found in Maughs' possession were stolen. The circumstances in the case failed to prove that the railroad company had missing tie plates and no representative of the company was able to testify that tie plates were missing. In the present case, both the circumstances and the testimony of GE employees proved that copper was missing from GE. Moreover, the copper was found at a location and under circumstances from which the only reasonable inference was that it was stolen.

Ample evidence supports the finding that the defendant was the criminal agent who stole GE's copper bus bars.  Unexplained or falsely explained possession of recently stolen goods is a fact sufficient for the judge or jury to infer that the person in possession of the stolen goods was the thief.  Montgomery v. Commonwealth, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980).  Moreover, the evidence showed that as a workman inside the GE plant, the defendant had the means and opportunity to gain access to the secured area where the copper was stored.  His explanation that he found the large amount of valuable copper alongside the roadway, next to the GE plant where he worked, and that he was taking his found property home late at night, was not credible, and the fact finder was entitled to disbelieve it.

Finding the evidence sufficient to support the conviction, we affirm.

Affirmed.

Barrow, J., dissenting.


While I agree that the evidence sufficiently supports a finding that the defendant possessed copper bars similar to those inventoried at the nearby GE plant, I also believe the evidence does not support a finding that any such copper bars were stolen. Therefore, I would reverse the judgment of conviction.

The prosecution must prove, in every criminal case, that a crime has been committed and that the defendant committed it. Id. In this case, the prosecution did not prove that a crime was committed. See Maughs v. Commonwealth, 181 Va. 117, 120, 23 S.E.2d 784, 786 (1943).

Maughs is strikingly similar to this case. In Maughs, police saw the defendant's automobile parked on a street parallel to railroad tracks where the railroad had recently laid new track and placed some "old tie plates" beside the tracks. They watched the defendant "make three or four trips from his automobile to the railroad tracks and heard him 'hammering tools' of some sort." Id. at 120, 23 S.E.2d at 785. When the police approached the defendant, he fled in his automobile at a high speed in spite of three warning shots fired in the air by the police. Id. Later, when they apprehended the defendant, the police found twenty-one tie plates in his automobile. Id. at 120, 23 S.E.2d at 786.

Two railroad employees who testified at trial could not say that the tie plates belonged to the railroad, although from the

circumstances, they "would think so." Id. Further, they were unable to say that any tie plates were missing from the pile beside the tracks. Id. The Court held that the prosecution failed to prove the corpus delicti, that the tie plates had been stolen.[3] Id.

In this case, the prosecution also failed to prove the corpus delicti, that the copper bars the defendant possessed were stolen. At the time the defendant was found with the copper bars, employees at the GE plant could not determine if any copper bars were missing from their inventory. No stamps or marks identified the bars in the defendant's possession as belonging to GE. GE purchased such bars by the pound, in different sizes, in random lengths, some with rounded edges and also some with square edges. Nothing about the bars in the defendant's possession identified them as "a unique item to GE." The GE employees could not distinguish a copper bar which had been purchased by GE from any other copper bar in the industry. One of the bars the defendant possessed had not been in GE's inventory for three years.

The only evidence supporting a finding that copper bars were missing from the GE inventory at any time was the evidence introduced showing the difference between two annual inventories. GE inventoried the bars on July 14, 1992, and again on the same

---

[3] Whether Maughs states the currently applicable law rests with the Supreme Court or the General Assembly.

day in 1993, and found "a difference in quantity of a hundred and thirty-three pounds." When the police apprehended the defendant on April 24, 1993, he had 416 pounds of copper. No one explained the discrepancy between the amount missing from the inventory and the amount found in the defendant's possession. The copper taken from the defendant was immediately turned over to GE, and, yet, the employee who testified about the results of the inventory did not know whether that copper had been included in the inventory. Significantly, the same employee testified that "there's some copper missing that is traceable to being used within the GE plant," indicating that some of the copper missing from the inventory may have been used by GE.

The inventory proved only that, for some unexplained reason, during the year, some copper may have been missing from GE's inventory. It did not prove that, in fact, copper was missing, nor did it prove that any copper bars were stolen from GE at any time, particularly close in time to the defendant's possession of them.

Consequently, the prosecution did not prove, beyond a reasonable doubt, that the copper bars found in the defendant's possession were stolen. Therefore, I would reverse his conviction.