COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Lemons and Senior Judge Cole
Argued at Richmond, Virginia

MICHAEL WAYNE LUCK

                                          OPINION BY
v.     Record No. 0196-98-2     JUDGE MARVIN F. COLE
                                        JUNE 15, 1999
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William H. Ledbetter, Jr., Judge

Elwood Earl Sanders, Jr., Appellate Defender
(Public Defender Commission of Virginia, on
briefs), for appellant.

Steven A. Witmer, Assistant Attorney General
(Mark L. Earley, Attorney General, on
brief), for appellee.


Appellant, Michael Wayne Luck, was tried by a Spotsylvania County jury for the first degree murder of William Smith (Smith), the felonious use of a firearm in the murder of Smith, and the robbery of Smith. The jury found appellant guilty of the charged offenses. The trial judge sentenced appellant, in accordance with the jury's verdict, to sixty-eight years of imprisonment.

On appeal, appellant challenges the trial judge's refusal to admit evidence of Smith's prior convictions of petit larceny and the reckless handling of a firearm.[1] Finding no reversible error, we affirm.

_____

[1]Appellant also challenges the trial judge's refusal to admit Smith's conviction of statutory burglary which, appellant

FACTS

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

At about 6:00 p.m. on January 8, 1997, the police found Smith's dead body near Davenport Bridge in a rural section of Spotsylvania County.  Smith had sustained shotgun wounds to the face and the left arm.  The wallet in Smith's pocket contained approximately forty-two dollars.  The police found no firearms or shotgun casings at the scene.  Smith's burned and abandoned truck was found the following day in Caroline County.

On the day of his death, Smith began work at around noon at his job at a CB radio and electronics shop at a truck plaza in Doswell, Virginia.  Appellant, who had been staying at the truck plaza motel while his vehicle was under repair, appeared at the radio shop at about 1:00 p.m. that day.  Appellant, who was

---

conceded at oral argument, was reduced at Smith's sentencing to the misdemeanor of trespassing.  Appellant did not contend at trial, as he does on appeal, that this conviction was admissible to impeach a hearsay statement of Smith.  We will not consider an argument on appeal which was not presented to the trial court.  See Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991) (citing Rule 5A:18).  Accordingly, Rule 5A:18 bars our consideration of this aspect of appellant's argument on appeal.  Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

-

familiar with Smith, asked if Smith could give him a ride. Smith was then unavailable.

Appellant returned to the shop twice more that afternoon, looking for Smith. During appellant's last visit, Smith was on the telephone ordering a CB radio for a customer. Mark Bayne, Smith's employer, asked if Smith had enough money to cover the COD order. Bayne testified, without objection, that Smith "looked in his wallet and counted his money and said, 'Yes, I got that and then some.'"[2] Smith showed his wallet to Bayne, and Bayne could see that it contained money.[3] Bayne testified that the radio Smith had ordered cost $256.

Smith left the radio shop with appellant at about 3:00 p.m. Smith said he would be back in a few minutes, but he never returned. At 3:40 p.m., one of Smith's cousins saw Smith driving in his truck with a passenger. Smith was heading away from the truck plaza and in the direction of the residence of Hazel Gayle, appellant's sister.

Gayle testified that appellant called her at work at 3:58 p.m. that day. Appellant said he was at her home, had broken into the gun cabinet, and intended to take her husband's

---

[2]Bayne testified about Smith's statement during the Commonwealth's case-in-chief. Appellant voiced no objection to this testimony.

[3]The record shows that on January 8, 1997, Smith sold a CB radio to William Burkhardt for $150 in cash. Smith also worked on the electronic equipment of at least five trucks that day. Smith would have been paid fifteen dollars in cash for each job.

-

shotgun.  Gayle spoke with appellant until 4:10 p.m., trying to persuade him not to take the gun.  Gayle arrived home at 4:35 p.m.  She found the glass in the gun cabinet broken and a shotgun missing.  Thomas Galbraith was working at a residence near Davenport Bridge that afternoon.  At some point after 4:10, Galbraith heard the sound of two gunshots.

Between 4:40 and 4:45, Samuel Smith (Samuel), who also was Smith's cousin, saw appellant driving Smith's truck on a narrow dirt road in Hanover County.  Samuel slowed down to talk to appellant and questioned appellant about the truck.  Appellant said the truck belonged to Gary Smith.  Samuel saw a shotgun on the seat beside appellant.  Samuel challenged appellant's statement about the truck, stating that appellant knew it was not Gary Smith's truck.  Appellant abruptly ended the conversation and drove away.

At 4:55 p.m., appellant drove Smith's truck to the home of Roger Miles.  At appellant's request, Miles took a ride with appellant.  Miles recognized Smith's truck and asked where Smith was.  Appellant said Smith had been shot and was at Davenport Bridge.

That evening, appellant called his sister's residence and spoke with her son, Forrest Gayle (Forrest).  Appellant said he had killed a man.  He asked Forrest to come to the truck plaza motel and retrieve the gun.  Forrest went to the motel, where he found appellant drunk.  Forrest returned the shotgun to his

-

mother's home.  At that time, the gun contained no ammunition. The weapon had been loaded before it disappeared from the gun cabinet.

Later that night, appellant appeared at Gayle's residence. He arrived in a truck which Gayle did not recognize.  Appellant said he had killed a man named "Smith."  He did not mention having done so in self-defense.

Appellant was at the home of Thomas Lemonedes watching television on the night of January 10, 1997 when a news program reported that appellant was wanted for murder.  Appellant said that "somebody else did it" and that he would surrender himself to the police the next day.

Appellant was arrested in Louisa County on January 11, 1997.  Through DNA testing, the police found that blood stains on appellant's clothing were consistent in all respects with Smith's blood.

Testifying in his own behalf, appellant claimed that he and Smith rode in Smith's truck to Davenport Bridge on the afternoon of January 8, 1997.  Appellant stated that he and Smith were negotiating the sale of a shotgun from appellant to Smith.  The gun was the same one appellant had taken from his sister's residence.

According to appellant, he and Smith argued over the purchase price, and both men got out of the truck.  Smith grabbed the barrel of the shotgun appellant was holding.

-

Appellant jerked the gun away and pushed Smith. As Smith backed up and reached into his jacket, he threatened to kill appellant. Appellant testified that he "panicked" and shot Smith with the shotgun.

Appellant said that Smith had showed him a gun the previous night. Appellant testified that he thought Smith was reaching for a firearm, and he feared for his life when he shot Smith. After the shooting, appellant drove away in Smith's truck. Appellant claimed Forrest assisted him that night in burning Smith's truck and transporting him back to the motel. On cross-examination, appellant admitted he was drunk that day and did not remember encountering anyone on the road after the shooting.

After appellant testified, the defense sought to introduce orders reflecting Smith's 1991 convictions for petit larceny and the reckless handling of a firearm. Appellant contended the petit larceny conviction was admissible "to impeach statements made by William Smith that he had a certain amount of money in his wallet." Appellant argued the firearm conviction was admissible to demonstrate Smith's propensity for violence. The trial court sustained the Commonwealth's objections and refused to admit the convictions into evidence.

ANALYSIS

I.

Appellant first contends that, in light of the evidence that he acted in self-defense when he shot Smith, Smith's prior conviction for the reckless handling of a firearm was admissible to demonstrate Smith's propensity for violence.

"Where the defendant claims self-defense, evidence of prior acts of violence by the victim is relevant as bearing on the reasonable apprehension which the defendant may have experienced and on the likelihood of the victim's aggressive behavior as claimed by the defendant." Edwards v. Commonwealth, 10 Va. App. 140, 142, 390 S.E.2d 204, 206 (1990).

> When admissible, such evidence bears on the
> questions as to who was the aggressor or
> what were the reasonable apprehensions of
> the defendant for his life and safety. As
> to the latter question, "[t]he true solution
> is to exercise a discretion, and to admit
> such facts when common sense tells us that
> they could legitimately affect a defendant's
> apprehensions." As to the former, who was
> the aggressor, the question is what the
> deceased probably did, and evidence of
> recent acts of violence towards a third
> person ought to be received if "so connected
> in time, place and circumstance with the
> homicide, as to likely characterize the
> deceased's conduct towards the defendant."

Randolph v. Commonwealth, 190 Va. 256, 265, 56 S.E.2d 226, 230 (1949) (citations omitted).

The evidence offered by appellant to show Smith's propensity for violence was a record from Hanover County General

-

District Court indicating that, on January 4, 1991, Smith was convicted of recklessly handling a firearm in violation of Code § 18.2-56.1. At the time of Smith's conviction, Code § 18.2-56.1(A) provided that "[i]t shall be unlawful for any person to handle recklessly any firearm so as to endanger the life, limb or property of any person. Any person violating this section shall be guilty of a Class 2 misdemeanor."[4]

In Darnell v. Commonwealth, 6 Va. App. 485, 491-92, 370 S.E.2d 717, 720 (1988), we stated that

> the recklessness involved in reckless handling of a firearm may or may not equate with the "recklessness" involved in criminal negligence. The meaning of "reckless" varies significantly depending on who uses it and in what circumstances. In laymen's terms, "reckless" means "lacking in caution." In legal terms, the definition depends on the context; what is "reckless" behavior in tort law may not be so construed in criminal law.

> \*       \*       \*       \*       \*       \*       \*

> In [Code § 18.2-56.1] . . ., the term "reckless" is not defined. At this point, however, we are not prepared to hold that the "reckless" handling of a firearm is limited to a handling "so gross, wanton or culpable as to show a reckless disregard of human life."

The record contains no information about the basis for Smith's 1991 conviction for violating Code § 18.2-56.1. The

---

[4]For his conviction, Smith received a suspended sentence of a $100 fine and sixty days in jail. A violation of Code § 18.2-56.1 has since been upgraded to a Class 1 misdemeanor.

-

unlawful activity leading to Smith's conviction could have arisen under a myriad of circumstances, which may have involved careless, but not violent or turbulent, behavior.  Indeed, Smith need not have actually discharged a firearm at a person or at property in order for him to be convicted under the statute.

Under these circumstances, in the absence of a proffer of evidence of the basis for Smith's conviction, we fail to see how the bare conviction order is evidence of Smith's prior violent or turbulent behavior.  Cf. Short v. Commonwealth, 213 Va. 746, 747, 196 S.E.2d 79, 80 (1973) (evidence of the defendant's prior homosexual advances to a third party did not "disclose such violent and turbulent acts as to make the evidence admissible").  Therefore, the trial court did not err in refusing to admit Smith's prior conviction of Code § 18.2-56.1 as evidence of Smith's propensity for violence.

## II.

The Commonwealth introduced Smith's statement to Bayne to prove that, when Smith left the radio shop with appellant, Smith's wallet contained an amount of money substantially greater than the amount found on his body a few hours later.  During its case-in-chief, the defense sought to introduce Smith's 1991 petit larceny conviction to impeach Smith's credibility.  The trial judge refused to permit appellant to introduce this evidence.

-

The Commonwealth contends appellant waived his objection to the trial judge's ruling because appellant did not object to the admission of Smith's statement when the Commonwealth introduced it. As it was offered for the truth of the matter it asserted, Smith's statement clearly was hearsay. See Garcia v. Commonwealth, 21 Va. App. 445, 450, 464 S.E.2d 563, 565 (1995) (en banc). We find no applicable exception to the hearsay rule through which Smith's statement would have qualified for admission. However, to accept the Commonwealth's waiver argument on appeal would be to permit the Commonwealth to benefit from its own wrong in offering the inadmissible evidence at trial.[5] "'No litigant . . . will be permitted to approbate and reprobate -- to invite error . . . and then to take advantage of the situation created by his own wrong.'" Manns v. Commonwealth, 13 Va. App. 677, 680, 414 S.E.2d 613, 615 (1992)

---

[5]Nor do we find a basis to apply the doctrine of curative admissibility, which, "in its broadest form, allows a party to introduce otherwise inadmissible evidence when necessary to counter the effect of improper evidence previously admitted by the other party without objection." Wright v. Commonwealth, 23 Va. App. 1, 7, 473 S.E.2d 707, 709-10 (1996) (en banc). "[W]hile a trial court generally has discretion in ruling on the admissibility of evidence, a trial court has no discretion to apply the doctrine of curative admissibility if the party seeking to invoke it intentionally failed to object to the inadmissible evidence in order to gain admission of otherwise inadmissible evidence." Id. at 8-9, 473 S.E.2d at 710 (citation omitted). We find no evidence in the record that the defense intentionally failed to object to the admission of Smith's statement in order to gain the admission of Smith's prior conviction.

(quoting Fisher v. Commonwealth, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988)).

Nor do we find merit in the Commonwealth's contention that, to comply with Rule 5A:18, appellant was required to offer his impeachment evidence at the time the Commonwealth introduced Smith's statement. It is within a trial judge's discretion to permit impeachment of a witness at a time other than when the witness testifies. See Mastin v. Theirjung, 238 Va. 434, 440, 384 S.E.2d 86, 89 (1989) (no abuse of discretion to permit introduction of impeachment evidence on rebuttal although the evidence could have been introduced in cross-examination of the witness).

The litigants have identified no Virginia appellate decision concerning the impeachment of a hearsay declarant, and we have found none. Several legal treatises, however, state that a hearsay declarant may be impeached in the same manner as a witness who actually appears in court. See, e.g., 3A John Henry Wigmore, Evidence in Trials at Common Law § 884 (Chadbourn rev. 1970) (stating that a hearsay statement admitted in evidence is subject to "impeachment in the appropriate ways"); 1 Charles E. Friend, The Law of Evidence in Virginia § 4-9(a) (4th ed. 1993) (opining that "[a] person whose hearsay statement is admitted into evidence is subject to impeachment, though the declarant did not appear in court"). Federal Rule of Evidence 806 provides in part that "[w]hen a hearsay statement . . . has

-

been admitted in evidence the credibility of the declarant may be attacked . . . by any evidence which would be admissible for those purposes if declarant had testified as a witness."  A vast majority of states have adopted similar rules.  See Arthur Best, Supplement to Wigmore on Evidence § 884 (1998) (listing forty-one states with a rule of evidence the same as or similar to Fed. R. Evid. 806).

"When the testimony of a witness concerning an extrajudicial statement declared by another is offered as evidence of the truth of the thing stated, the credibility of the declarant becomes crucial to the truth-determining process." Claud v. Commonwealth, 217 Va. 794, 796-97, 232 S.E.2d 790, 792 (1977).  Therefore, we adopt the majority rule and hold that when a hearsay statement has been admitted into evidence, the credibility of the declarant may be attacked by any evidence which would be admissible for those purposes if the declarant had testified as a witness.

As a general rule, a witness may be impeached by evidence that he or she previously was convicted of a misdemeanor involving moral turpitude.  See Johnson v. Commonwealth, 2 Va. App. 447, 456, 345 S.E.2d 303, 308 (1986).  "The Supreme Court of Virginia has recognized petit larceny as an offense involving moral turpitude . . . ."  Dowell v. Commonwealth, 12 Va. App. 1145, 1147, 408 S.E.2d 263, 264 (1991), aff'd on reh'g en banc, 14 Va. App. 58, 414 S.E.2d 440 (1992).  Thus, Smith's 1991 petit

-

larceny conviction was admissible to impeach Smith's statement

concerning the contents of his wallet.

"Before we adjudge an error to be harmful or harmless, we

must carefully examine all the evidence.  An error committed in

the trial of a criminal case does not automatically require

reversal of an ensuing conviction."  Galbraith v. Commonwealth,

18 Va. App. 734, 742, 446 S.E.2d 633, 638 (1994).

> A nonconstitutional error is harmless if "it
> plainly appears from the record and the
> evidence given at trial that the error did
> not affect the verdict."  "An error does not
> affect the verdict if a reviewing court can
> conclude, without usurping the jury's fact
> finding function, that had the error not
> occurred, the verdict would have been the
> same."

Scott v. Commonwealth, 18 Va. App. 692, 695, 446 S.E.2d 619, 620

(1994) (quoting Lavinder v. Commonwealth, 12 Va. App. 1003,

1005, 407 S.E.2d 910, 911 (1991) (en banc)).  "An error may be

harmless because other evidence of guilt is 'so overwhelming and

the error so insignificant by comparison that the error could

not have affected the verdict.'"  Ferguson v. Commonwealth, 16

Va. App. 9, 12, 427 S.E.2d 442, 444 (1993) (citation omitted).

Smith was shot and killed in January of 1997.  He was

convicted of petit larceny in 1991, when he was twenty-one years

old.  The remoteness in time of Smith's petit larceny conviction

would have affected the conviction's tendency to diminish

Smith's credibility.  Moreover, in contrast to Smith's prior

larceny conviction, the Commonwealth introduced testimony,

-

without objection, from numerous witnesses who described Smith as a dependable, honest, and hard-working young man at the time of his death.

Smith's statement concerning the contents of his wallet was relevant only to appellant's robbery charge, as the statement tended to prove that Smith possessed more than forty-two dollars when he left the shop with appellant. By offering Smith's petit larceny conviction, appellant sought to diffuse the probative effect of Smith's statement. However, other evidence introduced by the Commonwealth tended to prove that Smith possessed more than forty-two dollars when he left his place of employment a short time before his death. Since noon that same day, Smith had been paid $150 in cash for a radio he owned. Smith also performed at least five radio jobs for which he would have been paid fifteen dollars each.

Furthermore, the evidence was uncontroverted that, after shooting Smith, appellant stole Smith's truck. Especially in light of appellant's subsequent efforts to conceal his taking of the vehicle, the jury could have found that appellant's taking of the truck was a sufficient basis upon which to find appellant guilty of robbery. "The violence or intimidation by which robbery is accomplished must precede or be concomitant with the taking. If the robbery is accomplished by killing the victim, it is immaterial that the victim is dead when the theft occurs."

-

<u>Shepperson v. Commonwealth</u>, 19 Va. App. 586, 591, 454 S.E.2d 5, 8 (1995).

We conclude that any error in excluding Smith's conviction for petit larceny was harmless. Therefore, for the foregoing reasons, appellant's convictions are affirmed.

<u>Affirmed.</u>