COURT OF APPEALS OF VIRGINIA


Present:    Judges McClanahan, Haley and Petty
Argued by teleconference


ADRIAN L. SMITH

MEMORANDUM OPINION[*] BY

v.        Record No. 2968-07-1

JUDGE JAMES W. HALEY, JR.
FEBRUARY 3, 2009

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge

Nathan A. Chapman (Chapman Law Firm, on brief), for appellant.

Karen Misbach, Assistant Attorney General II (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Adrian L. Smith ("Smith") maintains the evidence is insufficient as a matter of law to

support his conviction for grand larceny of scrap metal.[1]  Specifically, he argues the evidence

does not show that the scrap metal in the vehicle in which he was a passenger was the same scrap

metal that had been stolen the day before.[2]  We agree and reverse.

Facts

David Little worked in a gravel parking lot in the City of Portsmouth for Old Dominion

Metals.  His job was to buy aluminum cans, copper, brass, and other scrap metals from

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Smith was also convicted of burglary in violation of Code § 18.2-91.  The
Commonwealth concedes the evidence was insufficient as a matter of law to support that
conviction.  Accordingly, we reverse that conviction and dismiss the indictment.

[2] Smith argues that the evidence is, likewise, insufficient to exclude the reasonable
hypothesis of innocence that a codefendant, the driver of the vehicle, or someone else, had stolen
the scrap metal and, further, that he had no knowledge the scrap metal was stolen.  Finding our
decision as to the first assignment of error dispositive, we do not address this argument.

whomever came to the lot with metal to sell.  Little would store the metals he purchased in the two trailers on the lot.  When the trailers were full of metal, trucks from Old Dominion Metals would take the trailers away, and replace them with empty trailers.  Little testified that he would typically work from nine in the morning until four in the afternoon.

Little testified that before he left work on January 9, 2007, he had about three hundred pounds of brass and copper and some aluminum in the trailers.  The brass and copper were stored inside the trailers in four gray, heavy-duty, thirteen-pound Rubbermaid trash cans.  He remembered that three of the trash cans were new and that one was old.  He also remembered locking up both trailers before leaving work on January 9.  When he came to work the next morning at nine o'clock, the locks on both trailers were cut and both the trash cans and their brass and copper contents were missing.

Detective Anthony of the Portsmouth Police Department testified that Smith came to speak with him on the afternoon of February 9.  After reading Smith Miranda warnings, Anthony asked Smith about the theft from the trailers owned by Old Dominion Metals on January 10.  Smith told Anthony that he was not involved in the theft.  However, Smith did tell Anthony that a man he knew as Carlton came to Smith's house with a truck containing scrap metal on the day after the theft.  Smith told Anthony that he had known Carlton for about six months and that they often worked together to buy and sell scrap metal.  Smith also told Anthony that he went in Carlton's truck to Smorgan's Steel and attempted to sell the scrap metal, but that Smorgan's would not purchase the metals because Carlton did not have a bill of sale.  Then Smith suggested that they go to Public Scrap in Newport News where Carlton sold the metal for between three and five hundred dollars.  Carlton gave Smith one hundred dollars for helping him.

Smith testified in his own defense.  His account did not differ from his earlier statement to Anthony.  He testified that Carlton did not have a bill of sale for the metal they sold to Public

Scrap; he also maintained that this was not unusual. Smith testified that he did not steal anything from Old Dominion Metals.

At Smith's bench trial, the Commonwealth introduced no evidence other than the testimony of Mr. Little and Detective Anthony. No one was able to say how much metal Carlton and Smith sold to Public Scrap the day after the burglary, though there was evidence that this metal included brass and copper. There was also no evidence as to the ratio of brass to copper in either the quantity of metal stolen or the quantity of metal that Smith later saw in Carlton's truck. No one knew whether that metal that Carlton sold to Public Scrap had been stored in four gray, thirteen-pound Rubbermaid trash cans.

Analysis

"The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). When considering the sufficiency of the evidence on appeal, we give the benefit of all reasonable inferences deducible from the evidence to the party prevailing below. Shropshire v. Commonwealth, 40 Va. App. 34, 38, 577 S.E.2d 521, 523 (2003). "A permissive inference in larceny cases is that the defendant's exclusive possession of recently stolen property permits the finder of fact to infer that the defendant was the thief, unless the defendant offers a reasonable explanation for his possession of the stolen property." Dobson v. Commonwealth, 260 Va. 71, 74, 531 S.E.2d 569, 571 (2000).

The Commonwealth argues that the trial court was entitled to apply the inference of larceny based on the defendant's possession of recently stolen property and, accordingly, that the trial court did not err in finding that Smith was guilty because Smith's statements to Detective Anthony established Smith's exclusive possession of the recently stolen scrap metal. "Witness

credibility, the weight accorded the testimony and the inferences to be drawn from proven facts are matters to be determined by the fact finder." Byers v. Commonwealth, 37 Va. App. 174, 179, 554 S.E.2d 714, 716 (2001). Because it was for the fact finder, in this case the trial judge, to decide whether or not to accept Smith's explanation of his possession of the recently stolen scrap metal, the argument continues, our standard of review requires that we affirm Smith's conviction.

The Commonwealth's argument assumes that Smith's statements to Anthony proved Smith was in exclusive possession of the recently stolen scrap metal. We disagree with the Commonwealth because the evidence at Smith's trial does not support this assumption. Thus, the trial court erred in applying the larceny inference based on the defendant's exclusive possession of recently stolen property. "In order for inferences to amount to evidence they must be inferences based on facts that are proved, and not inferences based on other inferences." Smith v. Commonwealth, 247 Va. 157, 159, 439 S.E.2d 409, 411 (1994) (quoting Smith v. Commonwealth, 185 Va. 800, 819, 40 S.E.2d 273, 282 (1946)). "Evidence offered to prove the *corpus delicti* in a trial for larceny is insufficient where the evidence fails to prove that property has been stolen from another *or where property found in the accused's possession cannot be identified as having been stolen*." Lew v. Commonwealth, 20 Va. App. 353, 355, 457 S.E.2d 392, 393 (1995) (emphasis added).

Many prior decisions applying the larceny inference have done so because a witness positively identified the property possessed by the accused as the same property that was stolen. See Blair v. Commonwealth, 225 Va. 483, 491, 303 S.E.2d 881, 887 (1983); Claud v. Commonwealth, 217 Va. 794, 798-99, 232 S.E.2d 790, 792 (1977); Harris v. Commonwealth, 38 Va. App. 680, 692, 568 S.E.2d 385, 391 (2002); Hackney v. Commonwealth, 26 Va. App. 159, 169, 493 S.E.2d 679, 684 (1997). Such identification testimony is admissible and, unless the

- 4 -

testimony is inherently incredible, defense arguments that the witness' identification of the property is unbelievable go to the weight of the evidence. See Claud, 217 Va. at 799, 232 S.E.2d at 792.

A few other decisions have applied the larceny inference to an accused's possession of fungible goods not easily susceptible of positive identification, but only when there was other strong circumstantial evidence that the property possessed by the accused was the stolen property. In Cook v. Commonwealth, 214 Va. 686, 204 S.E.2d 252 (1974), the two burglary victims left their house at seven o'clock in the morning. When they returned that evening, they discovered that someone had broken into their house and stolen a pint-sized glass jar containing pre-1964 silver coins, some of which had been taped together with scotch tape. Id. A bank teller testified that, at nine o'clock on the same morning, the defendant entered the bank with a pint-sized glass jar containing pre-1964 silver coins and exchanged the coins for bills. Id. at 687, 204 S.E.2d at 252. The bank teller also testified that several of the coins had small pieces of scotch tape on them. Id. Though one of the victims believed that the stolen coins were very much like the coins received by the bank teller and later shown to him at the defendant's trial, he could not positively identify them as his coins. Id. Nevertheless, our Supreme Court applied the larceny inference and affirmed the defendant's conviction.

> Coins are somewhat fungible and are not easily identified.
> However, in the present case there were certain facts and
> circumstances which made the coins more easily identifiable.
> They were a collection of rare pre-1964 coins, most of which were
> silver, and there were small pieces of Scotch tape on some of them.
> Similar coins were in the defendant's possession within two and
> one-half hours after the Cliendiest home was left unattended.

Id. at 688, 204 S.E.2d at 253. See also Lew, 20 Va. App. at 357-58, 457 S.E.2d at 394 (applying larceny inference when police officers found the defendant, at night, on a road adjacent to

General Electric Plant, in possession of copper "bus bars" (ten to twelve foot long lengths of copper) matching the description of similar bus bars missing from GE plant's inventory).

> Considering the unique nature of the copper bus bars, the circumstances under which they were found in the defendant's possession, their location next to the GE plant and in close proximity to a storage bin containing similar bus bars, the time of day at which the defendant was transporting them, the matching distinctive shiny and tarnished colorations between the stockpiled copper and that possessed by the defendant, the gap in the fence enabling the copper to be removed from GE's property, and the fact that GE had copper of these dimensions in its inventory, the evidence is sufficient to identify the copper found in the defendant's possession as belonging to GE and to prove that it was stolen.

Id.

In this case, the scrap metal that Smith and Carlton sold to Public Scrap was never introduced into evidence. There was no testimony from Mr. Little, or from any other witness, identifying that scrap metal as the same scrap metal that was stolen from Old Dominion Metals. Unlike the "rare pre-1964" coins stolen in Cook or the "unique" copper bus bars stolen in Lew, there was no evidence that there was anything unusual about the scrap metal in this case suggesting that the larceny inference should apply despite the absence of "strict proof of the identity of the articles stolen . . . ." Cook, 214 Va. at 687, 204 S.E.2d at 253. Also unlike Cook, where there was evidence that the defendant held the coins in a pint-sized glass jar similar to the jar that held the stolen coins, there was no evidence as to whether Carlton and Smith transported the disputed metals in the four gray Rubbermaid trash cans described by Mr. Little.

The Commonwealth contends that Carlton's lack of a bill of sale for the scrap metal supports the conclusion that the scrap metal in Carlton's truck was the stolen scrap metal. The problem with this argument is the paucity of information about the Newport News scrap metal business in the record before us. This record shows only that, of the two scrap metal buyers whose policies we know, Smorgan's Steel and Public Scrap, one apparently required a bill of

sale and the other did not. Smith's uncontroverted testimony was that it was not unusual in the business to sell scrap metal without a bill of sale. Even setting aside Smith's possibly self-serving account, the argument that Smith's lack of a bill of sale proves that he stole the metals is highly speculative. For these reasons, we hold that the trial judge erred in applying the larceny inference to Smith's case.

The next question we address is whether, setting aside the larceny inference, the Commonwealth presented sufficient evidence to prove Smith was guilty of larceny beyond a reasonable doubt. See Nelson v. Commonwealth, 12 Va. App. 268, 271, 403 S.E.2d 384, 386 (1991). Apart from Smith's statement that he assisted Carlton in selling similar scrap metal, the Commonwealth produced no evidence that Smith stole the scrap metal from Old Dominion Metals. Accordingly, we hold that the evidence was insufficient as a matter of law to convict Smith of grand larceny. We reverse his conviction and dismiss the indictment.

Reversed and dismissed.

McClanahan, J., dissenting.

I respectfully dissent from the majority's holding that the evidence was insufficient as a matter of law to convict appellant of grand larceny.

The evidence was sufficient to establish appellant's exclusive possession. Appellant admitted that Carlton, his codefendant, came to pick him up on the morning of January 10th between 9:30 a.m. and 11:30 a.m.. He admitted that when he entered Carlton's truck, there was scrap metal in the bed. They drove to Smorgan's Steel where they could not sell the scrap metal because they lacked a bill of sale. Appellant then told Carlton that he knew a guy in Newport News named Bobby who could arrange to buy material. They then drove to Public Scrap in Newport News, appellant's frequent place of sale, where they conducted the transaction. Appellant further admitted that he sold the scrap metal at Public Scrap as if it were his own. Such admissions, combined with this evidence, surely equate to exclusive possession of the scrap metal. See Dobson v. Commonwealth, 260 Va. 71, 74, 531 S.E.2d 569, 571 (2000); Montgomery v. Commonwealth, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980); Montague v. Commonwealth, 40 Va. App. 430, 437, 579 S.E.2d 667, 670 (2003).

The evidence was also sufficient to establish a nexus between the scrap metal stolen at Old Dominion Metals after 4:00 p.m. on January 9th or the early morning of January 10th and the scrap metal that was sold by appellant and Carlton at Public Scrap in Newport News on January 10th. "The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991). In the instant case, "the unexplained possession of recently stolen goods raises an inference that the possessor is the thief." Montgomery, 221 Va. at 190, 269 S.E.2d at 353; see also Dobson, 260 Va. at 74, 531 S.E.2d at 571. "The term 'recently' is a relative term."

Dobson, 260 Va. at 74, 531 S.E.2d at 571.  The shorter the period of time after the theft, the more reasonable it is to infer that the possessor stole the property.

Here, brass and copper, purchased by Old Dominion Metals midday on January 9th for between $350 and $400, were stolen sometime on the evening of January 9th or early in the morning of January 10th.  By 11:00 a.m. on January 10th, appellant and Carlton, his codefendant, were trying to sell scrap metal without a bill of sale.  When they found a buyer, Public Scrap, willing to ignore the lack of proper paperwork, they sold the copper for between $300 and $500.  Appellant received $100 of the proceeds of the sale, as well as a bucket of brass, which he was able to sell a few days later for $50.  The fact finder could reasonably infer that the sold metal was indeed the stolen scrap metal given that they were both brass and copper, the close time proximity, and the similar value.  Thus, I would affirm the trial court's judgment.