COURT OF APPEALS OF VIRGINIA

Present:    Judges Elder, Humphreys and Senior Judge Annunziata
Argued at Richmond, Virginia


WALKER J. TACKETT

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 0145-08-2                JUDGE ROSEMARIE ANNUNZIATA
                                                         FEBRUARY 24, 2009

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            Clarence N. Jenkins, Jr., Judge

            James L. McLemore, IV, for appellant.

            Erin M. Kulpa, Assistant Attorney General (Robert F. McDonnell,
            Attorney General, on brief), for appellee.


        Walker J. Tackett (appellant) contends the trial court erred in determining that the evidence

was sufficient to support his conviction for grand larceny of copper wire.  Specifically, appellant

contends (a) the Commonwealth's evidence was not sufficient to prove he was the person who stole

the wire and (b) the value of the goods was not adequately proven.  We disagree and affirm

appellant's conviction.

                                           BACKGROUND

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth, 26

Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438,

443, 358 S.E.2d 415, 418 (1987)).

--------

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence showed that Shannon Donovan, owner of FDI Contracting and Shawn Donovan LLC, hired subcontractors who often worked on the properties Donovan owned. The appellant, a tenant in one of Donovan's apartment buildings, was one of the subcontractors Donovan hired to perform electrical work at his property located at 1529 West Cary Street between December 25, 2006 and January 1, 2007.

Donovan gave appellant access to a side door that provided entry to the property from a public sidewalk. The door led to a room containing locked electrical panel boxes for the building. The panel box containing copper wire later found missing was secured by a four-digit combination lock. Donovan testified that only he, appellant, and Virginia Power had access to the panel boxes, and only he and appellant knew the code to the lock.[1] Moreover, Virginia Power always contacted Donovan before attempting to gain access.

After inspecting the Cary Street property's electrical wiring, appellant suggested disconnecting a high-voltage wire to solve the electrical problems Donovan had described. The high-voltage wire originated at the "Virginia Power pole, the transformer," and ran through an outside conduit, or pipe, that was attached to the building. The conduit was twenty-five feet long and required the use of a ladder to gain access to the pole and the top of the conduit. The wires running through the conduit terminated inside the room containing the electrical panel boxes. Donovan authorized the work appellant suggested, and appellant began the project. Donovan left the property shortly thereafter.

When Donovan returned to the property later that day, he observed appellant on a ladder using a hacksaw to cut through a large wire attached to the transformer. He asked appellant if it was

---

[1] Although Donovan initially testified that Virginia Power knew the combination to the lock, he later retracted that statement, testifying that the last time Virginia Power contacted him for access to the panel box, he met the technician at the building and let him in the room. Donovan testified, "I don't think I have given out the combination to anybody, except [appellant]," and Virginia Power "would call [him] to get access."

safe to do such work, and appellant replied that it was. Appellant explained he was temporarily disconnecting the wire at the pole before disconnecting it at the panel box. Donovan accepted appellant's explanation. He later asked appellant to close metal cover plates that were hanging over the outside of the building near the conduit through which the wire from the transformer extended. Appellant advised he would close them later. After observing appellant at work for some time, Donovan again left the property while appellant continued work on the project.

Two weeks later, Donovan returned to the property with another electrician to work on a project unrelated to the work appellant had completed. Donovan noticed that some of the metal access panels "didn't look right" and "weren't closed all the way." Upon further inspection, Donovan noticed "major wires" missing from one of the panel boxes. He also noticed "naked copper wire sticking out on the inside access panels." Donovan testified that he asked an electrician who was on the site to look at the work appellant had done "to make sure it was safe." Donovan and the electrician "went up into the panel box and noticed that there was some naked copper [wire]." After further investigation, Donovan noted that "a whole bunch of wiring was cut out and was missing" from inside the conduit that connected the transformer on the electrical pole outside the property to the panel box inside the property. Donovan determined that about 200 feet of heavy gauge copper wire, worth $2,000 "if you had to buy it," had been removed.

Donovan testified that he had not initially noticed the copper wire was missing because the conduit covering the wire was intact and prevented him from doing so, and no electrical problems at the property had been reported. He also testified he had not authorized anyone other than appellant to work on the wire and that, during the interval between the time appellant began his work and when Donovan noticed the wire was missing, no one, including Virginia Power, had worked on the wire, and only he and appellant had access to the panel box. Donovan testified he did not give appellant permission to take the wire.

Appellant acknowledged that he had worked on the wiring during the specified time period, testifying that he "cut the one high-leg [wire] loose [from the outside], and [] left it hanging there[, then he] went inside and cut it loose, as well." Appellant, a prior convicted felon, testified that several additional contractors and employees were present and working on the property that day. According to appellant, Virginia Power employees had access to the panel in order to read the meters, and the door leading to the room containing the locked panel box was never locked. Finally, appellant testified he did not take the copper wire that was missing from the property.

Appellant moved to strike the evidence both at the close of the Commonwealth's case and at the close of the defense's case. He argued the Commonwealth had not presented sufficient evidence to show that he was the person who had taken the missing copper wire. Appellant also contended the Commonwealth failed to prove the value of the copper wire, arguing that testimony from the owner as to purchase price alone was not sufficient to prove the element of value. The trial court rejected both arguments and found appellant guilty of grand larceny. Appellant timely noted this appeal.

STANDARD OF REVIEW

On appeal, "we presume the judgment of the trial court to be correct," Broom v. Broom, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992), and "will not set it aside unless it is plainly wrong or without evidence to support it," Dodge v. Dodge, 2 Va. App. 238, 242, 343 S.E.2d 363, 365 (1986).

SUFFICIENT PROOF APPELLANT WAS CRIMINAL AGENT

In every criminal case, the Commonwealth must prove the accused actually committed the crime charged. Commonwealth v. Presley, 256 Va. 465, 470, 507 S.E.2d 72, 74 (1998); Lew v. Commonwealth, 20 Va. App. 353, 355, 457 S.E.2d 392, 393 (1995). It is well established that circumstantial evidence is sufficient to support a conviction as long as it excludes every reasonable hypothesis of innocence. Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).

Further, "the Commonwealth need only exclude reasonable hypotheses that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). Whether a hypothesis of innocence is reasonable is a finding of fact, binding on appeal, unless plainly wrong. Glasco v. Commonwealth, 26 Va. App. 763, 774, 497 S.E.2d 150, 155 (1998), aff'd, 257 Va. 433, 513 S.E.2d 137 (1999).

Appellant contends the Commonwealth proved "no more than that [he] may have had the opportunity to commit the offense." He argues the Commonwealth used circumstantial evidence that he "had potential access to the wire" to prove his guilt, but it failed to exclude the reasonable hypothesis that others had access to the area where the wire was located and could have taken it from inside the panel box room or from the outside conduit. His contention is without merit.

Donovan saw appellant on a ladder cutting the wire where it was attached to the transformer located on a pole outside the building. That wire went from the pole through a conduit that extended into the building, and ended at the locked electrical box. Donovan subsequently discovered that the copper wire was missing. No one other than appellant was authorized to access the locked panel box during the time in question, and only appellant and Donovan knew the combination. Furthermore, because the conduit outside the building containing the wire remained intact, the only way to gain access to and remove the wire was to cut its connections at both the transformer located on the Virginia Power pole and the locked electrical panel box. Appellant knew the wires had been disconnected at both ends and knew the combination to the locked panel box. Moreover, in order to access and take the wire from the outside conduit, one would need to know the wire had been disconnected from the locked box and use a tall ladder to reach the top of the twenty-five-foot conduit. That individual would then have to pull out 200 feet, or sixty-six yards, of copper wire unnoticed while standing on the ladder twenty-five feet in the air. The trier of fact could reasonably reject that proposed hypothesis of innocence.

Appellant cites Christian v. Commonwealth, 221 Va. 1078, 1082, 277 S.E.2d 205, 207 (1981), to support his assertion that the Commonwealth failed to present sufficient evidence of his guilt. In Christian, the Supreme Court held that, "[o]pportunity is always a relevant circumstance, of course, and, when reinforced by other incriminating circumstances, may be sufficient to establish criminal agency beyond a reasonable doubt." Id. at 1082, 227 S.E.2d at 208. Here, appellant had the opportunity to take the wire, but it was not the sole evidence supporting his conviction. No one other than he had worked on the wire, he knew that its connections to the transformer and the panel box had been cut, and he had access to the locked panel boxes at the time in question. The trial court, as fact finder, rejected appellant's proposed hypotheses of innocence that someone else was aware of the disconnections, brought a tall ladder to the area and removed the wire during the two-week period. As fact finder, the trial court rejected that hypothesis, and we cannot say that determination was plainly wrong. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt appellant was the person who stole the copper wire.

PROOF OF VALUE

To convict appellant of grand larceny, the Commonwealth was required to prove the property he unlawfully took was valued at $200 or more. Code § 18.2-95(ii). The relevant value is the "current value" of the stolen items, Dunn v. Commonwealth, 222 Va. 704, 705, 284 S.E.2d 792, 792 (1981) (*per curiam*), "measured as of the time of the theft," Parker v. Commonwealth, 254 Va. 118, 121, 489 S.E.2d 482, 483 (1997).

"The opinion testimony of the owner of the stolen item generally is competent and admissible on the issue of the value of that property." Id.; see also Robinson v. Commonwealth, 258 Va. 3, 5-6, 516 S.E.2d 475, 476 (1999) (fair market value is the price item will bring when offered for sale by seller who wants but is not obligated to sell and bought by a buyer under no

necessity of buying). Moreover, the opinion testimony of a nonexpert "is admissible upon the subject of property value, provided the witness possesses sufficient knowledge of the value of the property or has had ample opportunity for forming a correct opinion as to value." Walls v. Commonwealth, 248 Va. 480, 483, 450 S.E.2d 363, 365 (1994) (citing Haynes v. Glenn, 197 Va. 746, 750, 91 S.E.2d 433, 436 (1956)).

Donovan, the owner of the property, has operated a contracting company for eight years, during which time he performed renovations and new construction on residential and commercial property. He testified that five copper wires "close to 200 feet" were stolen, and he described the wire as "heavy gauged, three aught copper wire." Donovan opined that "[i]t's about $2,000.00 worth of wire if you had to buy it." The trial court noted Donovan's experience as a general contractor and accepted his opinion as to the fair market value of the wire.

Appellant contended at trial there was nothing to substantiate Donovan's opinion that the wire was worth over $200. On appeal, appellant argues there was no evidence regarding the condition of the wire and the effects of depreciation on it.

In Dunn, 222 Va. at 705, 284 S.E.2d at 792, the Virginia Supreme Court found the evidence insufficient to prove that a ten-year-old typewriter bought for $150 met the then-statutory limit of $100 (explaining that there must be "due allowance for elements of depreciation" to show effects of age and wear and tear on the value of an item such as a typewriter). However, in Dunn the Supreme Court limited its depreciation analysis to mechanical and "technical equipment," which "generally depreciates in value over time." Lester v. Commonwealth, 30 Va. App. 498, 505, 518 S.E.2d 318, 322 (1999).

Copper wire is not mechanical or electrical equipment that has a limited life span or is subject to deterioration from wear and tear. A depreciation analysis was, therefore, not required. The relevant consideration in valuing copper wire is its current value as a conductor of electricity

and as a semi-precious metal. Lay testimony from an experienced contractor, namely, Donovan, established that it would cost $2,000, or about $10 per foot, to replace the amount of copper wire stolen from the building. Thus, the fact finder had testimony from the owner, who, as a contractor, was also a lay expert, as to the present value of the stolen copper wire. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt the stolen wire had a value of $200 or more.

Accordingly, we affirm the trial court.

Affirmed.