# Richmond.

## WHALEN V. COMMONWEALTH.

### MARCH 8th, 1894.

1. CRIMINAL PROCEEDINGS—*Indictment.*—An indictment for larceny of "one paper purporting to be a check for $125 of the value of $125 of the goods and chattels of one R., then and there being on the person of said R.," *held,* sufficient. Code, § 3703.

2. IDEM—*Rule—Value.*—Code, § 3709, providing that in such a prosecution the money due on, or secured by, the writing, and "remaining unsatisfied," shall be deemed the value of the article stolen, *held,* merely to prescribe a rule for estimating the value of the paper, and not a part of the necessary description of the offence.

3. IDEM—*Proof of value.*—As the law presumes that the face value of the writing is its actual value, *held,* no proof of its actual value is required.

4. IDEM—*Case at bar.*—As the case stands on defendant's exception to the ruling of trial court overruling his motion for a new trial, which is equivalent to a demurrer to the evidence, and as the commonwealth is entitled to the benefit of all reasonable inferences that can be drawn from the evidence, *held,* the evidence disclosed by the record and set forth in the opinion is sufficient to warrant the verdict of guilty of grand larceny. Code, § 3707, Acts 1893–94, p. 219.

5. IDEM—*Abandonment—Case at bar.*—Fraudulently taking pocketbook from another's pocket with intent to wholly deprive owner of his property, completes the larceny, though defendant afterwards abandoned it.

6. APPELLATE PRACTICE—*Bills of exception.*—Where no formal bills of exception appear from the record to have been filed to any ruling which was made prior to the rendition of the verdict, *held,* all exceptions, or points saved, during the trial, must be considered as having been abandoned. *Trumbo* v. *Street Car Co.,* 89 Va., 780.

Argued at Staunton. Decided at Richmond.

Error to judgment of the hustings court of the city of Staun-

ton, rendered July 10, 1893, in a prosecution against Percy Whalen, whereby the prisoner was sentenced to the penitentiary for a term of five years for larceny from the person. Opinion states the case.

*R. S. Ker* and *R. S. Turk*, for plaintiff in error.

*Attorney-General R. Taylor Scott*, for commonwealth.

LEWIS, P., delivered the opinion of the court.

The prisoner was indicted and convicted of larceny from the person, and sentenced, in conformity with the verdict, to imprisonment in the penitentiary for five years. The indictment charges the larceny of divers United States treasury and national bank notes, and also "one paper purporting to be a check for the payment of one hundred and twenty-five dollars, of the value of one hundred and twenty-five dollars, the goods and chattels of one H. A. Ricketts, then and there being upon the person of the said Ricketts."

The first question is whether the indictment is sufficient. It is contended that the description of the check is too vague and indefinite, and especially because there is no allegation that any part of it remained due and unsatisfied at the time of the alleged larceny. We think this objection is untenable. Section 3708 of the Code provides that "if any person steal any bank note, check, or other writing, or paper of value * * he shall be deemed guilty of larceny thereof, and receive the same punishment, according to the value of the thing stolen, prescribed for the punishment of the larceny of goods and chattels." The offence of stealing a check, or promissory note, or anything of that sort, is altogether statutory, and Bishop lays it down as the established rule that where a statute, simply, and in terms not limited, makes indictable the larceny of "any promissory note," it is adequate to say "one

promissory note for the payment of, &c., of the value of," &c.; and he cites the case of *Commonwealth* v. *Brettum*, 100 Mass, 206, where the simple description "one promissory note, of the value of," &c., was held sufficient. In that case it was said that as promissory notes are made the subject of larceny by statute, they may be described in the same manner as other things having an instrinsic value; that is, by any description applicable to them as a chattel, and that the defendant has the same protection against a second indictment for the same offence as in other similar cases, as for example, an indictment for stealing a sheep.

Section 3709 of the Code, it is true, provides that in a prosecution like the present, the money due on or secured by the writing in question, "and remaining unsatisfied," shall be deemed to be the value of the article stolen. But this merely prescribes a rule for estimating the value of the paper, and is not a part of the necessary description of the offence prescribed by the preceding sections, although the words "remaining unsatisfied" are usually inserted in the indictment in such cases. Archb. Crim. Pl., 46; 2 Bish. Crim. Proc. (3d ed.), sec. 732; *Adams' Case*, 23 Gratt., 949.

*Robinson's Case*, 32 Gratt., 866, relied on for the prisoner, is not in conflict with these views. There the indictment simply charged the larceny of "certain paper," without other description, and this was held insufficient. The court said it might have been wall paper or writing paper, or any other kind of paper, thus leaving the defendant uninformed as to the nature of the charge to be answered, which cannot be justly said of the indictment in the present case.

The only other question presented by the record is, whether the trial court erred in refusing to grant a new trial on the ground that the verdict was contrary to the law and the evidence.

The prisoner offered no evidence, and that for the commonwealth is substantially as follows:

On the night of the alleged larceny, Ricketts, a resident of Missouri, and a number of persons, some white and some colored, were drinking in a bar-room in Staunton. Ricketts was "treating," and had been drinking freely. He tendered a twenty-dollar note to the bartender, for which the latter gave him in change three five-dollar notes and some silver. The silver he put in his pocket and the notes in his pocket-book. This was done twice during the evening, and each time Ricketts put the pocket-book in his hip pocket.

Two of the witnesses afterwards saw "a white man" raise his (Ricketts') coat tail while he was leaning, intoxicated, against the bar, and at the same time saw the prisoner take "something black" from his hip pocket and put it into his own pocket. The white man and the prisoner then left the bar-room and went out on the street. One of the witnesses says he started to follow them "to get some of the 'swag,'" but was ordered back by the prisoner. The other witness said he saw them going up the street, "looking over some papers," and that he afterwards heard the white man say, "we robbed an old 'jay' to-night."

A third witness testified that the next morning, upon being applied to by the chief of police to assist in recovering the stolen articles, he sought the prisoner, who told him where he could get "the pocket-book," namely, on the shed at the Chesapeake and Ohio depot, where the witness afterwards found it. Some of the papers had slipped out of the pocket-book, but were found lying near it, and were picked up and put back by the witness. The witness says he told the prisoner that "if the gentleman could get his papers he would let the matter drop." He also said to him, "They are after you," to which the prisoner replied, "I know they are." The evidence is rather obscurely certified, but the inference is irresistible that the witness and the prisoner were talking of Ricketts' pocket-book and its contents as having been stolen the previous night; and as the case stands in this court as on a

demurrer to evidence, the commonwealth is entitled to the benefit of all reasonable inferences that can be drawn from the evidence. The pocket-book was delivered by the witness to Ricketts' counsel, Mr. Curry, who, upon examining it, found that it contained papers that Ricketts had told him were in it, including the check in question. No money was found in it. Ricketts himself was not examined as a witness, but his declarations as to the papers seem to have been received without objection.

. The pocket-book was identified by the bartender as the one Ricketts had, the night of the larceny, and also by Scheffer, the proprietor of the Virginia hotel, where Ricketts stopped during his stay in Staunton. The latter witness also testified that Ricketts opened the pocket-book in his presence, before the larceny, and that he observed in it "some papers and money."

Another witness testified that he knew Ricketts, and that he was cashier of the Southern Bank of Mexico, Mo. The check was offered in evidence, and Tams, cashier of the Augusta National Bank, of Staunton, testified that he would have cashed it, at Ricketts' request, if he had endorsed it, and identified himself as the payee named therein. The check was drawn by the assistant cashier of the Southern Bank of Mexico on the Chemical National Bank, of New York, for $125, payable to the order of H. A. Ricketts.

We are of opinion that this evidence warranted the verdict. The fact that two of the witnesses saw the prisoner take something out of Ricketts' hip pocket, where, a little while before, he had put his pocket-book, coupled with the fact that when asked, the next day, about the pocket-book he (the prisoner) told the witness where it was, who found, at the designated place, Ricketts' pocket-book, containing the check in question, and all the other circumstances of the case, fairly establish the *corpus delicti* and the ownership of the check as alleged in the indictment. The evidence was also sufficient to warrant the

jury in finding that the check was of a value exceeding five dollars, and, therefore, that the prisoner was guilty of grand larceny under the statute.   Code, sec. 3707; Acts 1893–94, p. 219.   Indeed, no proof of its actual value was required, as *the law* deems it to be of the value expressed on its face.   Code, sec. 3709; *Adams' Case*, 23 Gratt., 949.

It was argued that if the accused, in fact, took the pocket-book, the crime of larceny was not complete, because his abandoning it negatives the idea that he took it *lucra causa*, or with intent to convert it or its contents to his own use.   But as to this it is enough to say that the taking was fraudulent, and with intent wholly to deprive the owner of the property, and that is sufficient to make out a case of larceny.   Archb. Crim. Pl. & Ev., 180.

Complaint is also made of the action of the trial court in regard to the instructions; but there is only one bill of exceptions in the record, and that must be considered as having been taken to the refusal to grant a new trial.   That bill embodies the evidence, and also recites that the prisoner excepted during the progress of the trial to the admitting of certain evidence, and to the giving and refusing to give certain instructions. But as no formal bill of exceptions to any ruling which was made prior to the rendition of the verdict was tendered (or, at least, none appears in the record), it follows that all exceptions, or points saved, during the trial must be considered as having been abandoned.   *Trumbo's Adm'r* v. *City Street Car Co.*, 89 Va., 780, and cases cited.

The judgment is affirmed.

JUDGMENT AFFIRMED.