# Richmond

## RUBY MAY ALLEN v. COMMONWEALTH OF VIRGINIA.

June 9, 1947.

Record No. 3225.

Present, All the Justices.

The opinion states the case.

*James G. Martin & Son* and *Reuben E. Spandorfer*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *M. Ray Doubles, Assistant Attorney General*, for the Commonwealth.

HOLT, C. J., delivered the opinion of the court.

Albert S. Coles, the prosecuting witness, was a member of the Merchant Marine, twenty-two years old, unmarried and on furlough at his home in Northumberland county.

He came to Norfolk and on May 15, 1946, went down to Ocean View, where he met Ruby Mae Allen, a young woman from Norfolk, eighteen years old, who from her physical condition appeared to be a professional prostitute. He spent that night with her in a cabin at Ocean View. From there he took her to his parents' home in Northumberland county, where they remained for about ten days. He became infatuated with her, proposed marriage and was accepted.

He had no money in hand with which to support a wife, but he did own two tracts of land in Lancaster county, which he sold to his father for $2,000. From its proceeds, he received from a bank at Kilmarnock $1,000 in cash and $1,000 in ten American Express Company travelers checks, payable to his order. Except for variation in number, they read:

"U. S. Dollar Travelers Cheque            R6,471,283
When countersigned below with
this signature        Six Four Seven One Two Eight Three
"Albert S. Coles    Before cashing write here city and date 19

AMERICAN EXPRESS COMPANY
At Its Paying Agencies

"Pay this Cheque from our
Balance to the Order of.........................$100.00

In United States          In all other countries
One Hundred Dollars       At current buying rate
                    For bankers' cheques on New York

"Countersign here in presence
    of person cashing

————————————                  Treasurer.

"This cheque is redeemable only at the company's offices and bankers in United States."

These travelers checks and this cash Coles gave to this companion and told her to keep them for him. She then put them in her billfold and did keep them.

From Kilmarnock they went to Tappahannock and remained in a hotel there for about four days, registering as man and wife. From Tappahannock they came back to Norfolk and reached there on June 2, 1946. When there, they went to South Norfolk and rented a cabin. From this cabin that evening they went to a burlesque show at Ocean View Park in the city of Norfolk. Coles had no money, and so Miss Allen gave him $5.00 with which to buy tickets to this performance. This $5.00 she took from her pocketbook or billfold. Coles testified:

"Q. Where was the $1,000.00 or any balance that may have remained of it and the travelers checks at the time you went to the burlesque show?

"A. She had them in her pocket book.

"Q. Ruby Mae Allen, you mean?

"A. Yes.

"Q. From the time that you delivered the money and the checks to her, did she ever turn them back to you, or not?

"A. No, sir, she didn't."

It would appear that she paid for the cost of maintenance after she took over the cash at Kilmarnock. Coles estimated that to have been about $100.00 but said that he might, in a small measure, have been mistaken, and from that he estimated $900.00 was left.

After the tickets were bought, they went into the theatre. There the defendant said that she had to retire to the rest room. She went out and did not come back. He sought for her in vain and did not see her again until they met in the police court on July 12, 1946. She had then been arrested on a warrant sworn out by him.

Frank Twiford had known Miss Allen for quite awhile. She visited him in his room at 252 Browning street in the city of Norfolk, bringing with her a suitcase, in which were a pocketbook and certain personal belongings. Vernon L. Nowitzky was Frank Twiford's landlord, and after Twiford had left, he found in a bureau drawer in this tenant's room these travelers checks, which he turned over to Sergeant Merritt. On three of them, Coles' signature was either wholly or partially erased or obliterated; seven of them had not been tampered with.

We may restate the situation: Coles gave these travelers checks to Miss Allen at Kilmarnock for safekeeping. He never saw them again. They went to Norfolk. She left him at the theatre, and he did not see her again until he met her in the police court. In the meantime she had visited the room of her friend, Frank Twiford, and in the top bureau drawer there were found these travelers checks. That she made away with them in the city of Norfolk is too plain for argument.

█ It is said that these travelers checks are not the subject of larceny or of embezzlement. Travelers checks are issued by almost every bank and may be cashed in almost every country. No such checks are more widely used than those of the American Express Company.

Code, section 4442, reads:

"Larceny of bank notes, checks, etc., or any book of accounts; how punished.—If any person steal any bank note, check, or other writing, or paper of value, whether the same represents money, and passes as currency, or otherwise, or any book of accounts, for or concerning money or goods due or to be delivered, he shall be deemed guilty of larceny

thereof, and receive the same punishment, according to the value of the thing stolen, prescribed for the punishment of the larceny of goods and chattels. The provisions of this section shall be construed to embrace all bank notes, and papers of value representing money and passing as currency, whether the same be the issue of this State or any other State, or of the United States, or of any corporation, and shall include all other papers of value, of whatever description."

It will be noted that this section covers "papers of value," and again "all other papers of value, of whatever description."

In *Samberg* v. *American Exp. Co.* (1904), 136 Mich. 639, 99 N. W. 879, the court said:

"Checks of a like character to this one have come into very general use, especially by travelers. They are an ingenious, safe, and convenient method by which the traveler may supply himself with funds in almost all parts of the civilized world, without the hazard of carrying the money on his person."

See also, *Sullivan* v. *Knauth*, 220 N. Y. 216, 115 N. E. 460, L. R. A. 1917F, 554 and note.

■ The court declined to tell the jury that there was no evidence of embezzlement of money in Norfolk. The defendant denies that any money or travelers checks were given to her by Coles at any time. That these travelers checks were given to her by Coles, brought back to Norfolk by her and made away with or abandoned, is of course plain. The travelers checks and the money were proceeds of one transaction and were given to her at the same time. The conclusion that a part of the money given to her was also brought back to Norfolk is a conclusion which the jury might well have drawn. In fact, it was an inevitable conclusion. Certainly she brought back some money. There is no error here.

The court declined to tell the jury that travelers checks were not susceptible of larceny or of embezzlement. The statute covers that case. The payee can cash them at any

time and at any place, and one who forges them can do the same, just as in the case of a certified check. It is perfectly true that these travelers checks had no value without Coles' endorsement, but that endorsement could be forged. See *Whalen* v. *Commonwealth*, 90 Va. 544, 19 S. E. 182.

The court declined to tell the jury that "mere suspicion, no matter how strong, is not sufficient to convict." This is a stock instruction and is usually given, but even if it should have been given here, its omission was harmless. Conviction here does not rest upon suspicion but upon evidence.

As is well said in the petition for appeal, "Taking all evidence for the prosecution as 100 per cent true, there was sufficient evidence to prove Ruby had embezzled the money and checks *at some place*, but any error in the trial would require a new trial."

The defendant has testified. Had the jury seen fit to believe what she said, they would have found her not guilty. They did not.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*