**UNITED STATES of America**

**v.**

**Edward F. MAYO, Jr., Defendant.**

**No. CRIM.2:02 CR 099.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Dec. 5, 2003.

---

**3.** The court declines to address Abercrombie's alternative ground for the denial of Continental's motion to dismiss.

Andrew Anthony Protogyrou, Protogyrou & Rigney PLC, Norfolk, VA, for Defendant.

Robert John Krask, U.S. Attorney, United States Attorney's Office, Norfolk, VA.

### *MEMORANDUM OPINION*

HUDSON, District Judge.

**(Calculation of Actual Loss and Total Offense Level Under United States Sentencing Guidelines)**

This case was before the Court for sentencing on November 21, 2003. At that time, the defendant, Edward F. Mayo, Jr. ("the defendant" or "Defendant Mayo") challenged the United States probation officer's calculation of his total offense level under the United States Sentencing Guidelines. At issue was whether the probation officer properly calculated the amount of actual loss to SunTrust Bank ("SunTrust" or "the Bank"), one of the financial institutions defrauded in this case. The probation officer computed the loss at $4,418,497.71 and pursuant to U.S.S.G. § 2F1.1(b)(1)(N), enhanced the defendant's base offense level by thirteen (13). The Court after hearing argument of counsel and reviewing memoranda of law filed by both parties determined that the defendant's base offense level was properly calculated and imposed sentence in this case accordingly. The Court will further enlarge its rationale for rejecting the defendant's suggested method of calculating the loss to SunTrust Bank in this case.

The defendant contended that the actual loss sustained by SunTrust should be offset for guideline purposes by monies paid to or recaptured by the Bank after the discovery of the fraudulent scheme. First, the defendant argued that the actual loss should be reduced by $215,008.11, the amount transferred two days after the fraud was discovered into an overdraft account from other accounts maintained by the defendant at SunTrust. Second, the defendant maintained that he is entitled to an offset of $941,000.00, which was repaid as restitution by the co-defendant in this case. Lastly, the defendant claimed credit for periodic subsequent repayments he made to SunTrust after the losses were discovered.

The Court disagreed with the defendant's analysis, which is contrary to the traditional jurisprudence of larceny. This case involved an elaborate and sophisticated check kite scheme designed to defraud a number of financial institutions, including SunTrust Bank. Check kiting is a scheme "designed to separate the bank from its money by tricking it into inflating bank balances and honoring checks drawn against accounts with insufficient funds." *United States v. Doherty,* 969 F.2d 425, 428 (7th Cir.1992). "The bare act of check kiting defrauds the bank by temporarily placing the bank's funds at the disposal of the account holder." *United States v. Frydenlund,* 990 F.2d 822, 824 (5th Cir. 1993). Check kiting schemes are analogous to theft. *United States v. Flowers,* 55 F.3d 218, 221 (6th Cir.1995). *See also* U.S.S.G. § 2F1.1, comment n. 7.

 A core element of larceny at common law is what is known as a trespassory taking. It is a taking or removal of the possession of property from the owner with felonious intent. *Tanner v. Common-*

*wealth,* 55 Va. (14 Gratt.) 635 (1857). *See also Mason v. Commonwealth,* 200 Va. 253, 256, 105 S.E.2d 149 (1958). This element of the crime is closely allied with the element of carrying away, which is sometimes referred to as asportation. The actual or constructive movement, no matter how slight, of the property from the owner's possession is sufficient to satisfy the asportation or carrying away element of larceny. *Whalen v. Commonwealth,* 90 Va. 544, 19 S.E. 182 (1894); *Jones v. Commonwealth,* 3 Va.App. 295, 302, 349 S.E.2d 414, 418 (1986).

■ Under fossilized common law principals, loss occurs at the moment of asportation. The moment property is moved with felonious intent, and the thief has exercised immediate dominion and control of the property, the crime of larceny is complete. *Welch v. Commonwealth,* 15 Va.App. 518, 522–24, 425 S.E.2d 101 (1992). In the immediate case, the transfer of money from an account controlled by Sun-Trust into an account controlled by the defendant was sufficient to consummate the crime.

The defendant's argument in support of a net loss analysis had two facets. It included money repaid by the defendant and his co-defendant, Stephen Michael Flowers, following the Bank's detection of the fraud, and the Bank's exercise of its entitlement to seize money in other accounts in the defendants' name to mitigate losses. Both events occurred after all the elements of the crime of larceny were completed.

■ With respect to the money repaid by Defendant Mayo after the fraud was detected, this simply constituted restitution which has no legal bearing on the amount of money actually "taken" by the defendant as part of the scheme to defraud. Restitution after the loss has been discovered does not change the fact of the loss. *Flowers,* 55 F.3d at 221–22; *United*

*States v. Mau,* 45 F.3d 212, 216 (7th Cir. 1995). This aspect of the defendant's argument is clearly without merit. As the United States Court of Appeals for the Third Circuit pointed out in *United States v. Shaffer,* 35 F.3d 110, 111 (1994), in check kiting cases, the court should ordinarily calculate the amount of loss as it exists at the time the crime was detected, rather than as it exists later at the time of sentencing.

■ The Bank's exercise of immediate self-help remedies is a closer question. Defendant Mayo contended that because the Bank seized monies he had on deposit in other accounts to offset its losses, the monies recaptured by the Bank should not be considered losses for guideline purposes. The Bank's recapture of overdraft losses by attaching funds in other accounts maintained by the offender is a contractual remedy that reduces the defendant's civil liability, but has no bearing on the quantum of money actually taken by the theft. This type of post-detection recovery does not reduce the amount of loss that was actually "taken and carried away" as a result of the fraudulent scheme. The actual loss is best measured by the amount of bank funds fraudulently placed at the disposal of the account holder. As the United States Sentencing Guidelines make clear, the loss under § 2F1.1 in theft cases is the value of the money, property or services unlawfully taken. Otherwise, a check kiting account holder could skip the paperwork, extend himself a loan with neither the bank's approval nor adequate collateral, on the account holder's own terms, and be virtually absolved of significant criminal responsibility if the bank, on its own initiative, attached other monies on deposit at the bank. Conceptually, this notion not only jeopardizes the financial security of the banking institution, but defies logic and commonsense.

Unlike cases cited by the defendant where actual losses are reduced by the amount of money in the same overdraft account, such as *Flowers,* 55 F.3d at 222, or situations where a customer has a specifically designated overdraft protection account or collateral, such as *United States v. Kopp,* 951 F.2d 521, 536 (3rd Cir.1991), the amount of loss in this case is the amount of money transferred to the defendant's custody or control as a direct result of the fraudulent scheme. The Court, therefore, finds that the actual loss to Sun-Trust Bank as a result of Defendant Mayo's bank fraud is $4,079,421.00.

In the *Flowers* case, discussed above, the reviewing court found no error in the trial court's decision to offset bank losses by the amounts recovered immediately from other deposits maintained by the defendant at the victim banks. *Flowers,* 55 F.3d at 221–22. The Court in *Shaffer* appears to embrace this method of loss calculation. *Shaffer,* 35 F.3d at 114. Interestingly, the reviewing courts in *Shaffer* and *Flowers* restated the time-honored principle that the amount of loss in check kiting cases should be calculated at the time the crime was committed, which would presumably be that moment in which bank funds were fraudulently placed at the account holder's disposal. *Id.* The theory of calculating losses articulated in *Shaffer* and *Flowers* appears to be inconsistent with the theft-based analysis articulated by those courts. *Id.* Therefore, that method of calculation will not be adopted by this Court. The United States Court of Appeals for the Fourth Circuit has not had occasion to address this issue.

Therefore, coupling the losses sustained by SunTrust Bank with the stipulated losses incurred by other banks in this case, the total actual loss for guideline purposes is $ 4,418,497.71.

Since the amount of actual loss exceeds the $2,500,000.00 threshold set forth in

U.S.S.G. § 2F1.1(b)(1)(N), the Court is of the opinion that the United States probation officer properly assigned a thirteen (13) level enhancement to Defendant Mayo in this case.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.