COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Haley and Powell
Argued at Richmond, Virginia

RYAN SCOTT BURTON

OPINION BY
v.          Record No. 0740-10-2          JUDGE JAMES W. HALEY, JR.
MAY 17, 2011

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Harold W. Burgess, Jr., Judge

Matthew T. Paulk (Matthew T. Paulk, PC, on brief), for appellant.

Joshua M. Didlake, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

I.  Introduction

Ryan Scott Burton appeals his conviction for grand larceny.  He maintains the trial court

erroneously admitted lay witness testimony on the value of the stolen property and convicted him

on insufficient evidence.  We disagree with both assertions and affirm.

II.  Facts

On May 2, 2009, Richard Dabney died in his home.  The same day, his brother, Jesse

Dabney, found his body.  Jesse entered the home that afternoon by punching through some glass

on the front door.  Jesse screwed a piece of plywood over the hole prior to his departure.  When

Jesse returned to Richard's home on May 4, he noticed the roll-up garage door was open, the

walk-in garage door had pry bar markings on it, and Richard's motorcycle and rifle were missing

from the garage.  The house was in complete disarray, and nearly all of the screws Jesse used to

attach plywood to the front door were missing.  After calling the police, Jesse surveyed the house

for additional missing items.  He noticed several clear coin jars he had put in his brother's

kitchen, including a few half-gallon and two gallon-sized jars, were empty. Jesse testified one of the two gallon-sized jars had been more than "three fourths" full, and the other had been "really full." Both gallon containers "had [contained] no pennies, just quarters, dimes, and nickels." The smaller jars had contained "pennies and nickels and dimes." Over Burton's objection, Jesse estimated the coins were worth over $200.

On May 4, the same day Jesse discovered the missing items, Ryan Burton took Richard's Harley Davidson motorcycle to a friend's home to have it appraised. Burton left the motorcycle there, where police seized it two days later. Also on May 4, Burton cashed in $385.80 worth of coins through a cash machine inside a Food Lion store. He "put so much change" in the cash machine that a store clerk "had to unjam it" so he could finish inserting the coins. Two days later, Burton was arrested at his home where police recovered Dabney's missing rifle and a jacket that had belonged to him.

Burton was charged with grand larceny.[1] At the conclusion of the bench trial, the court took under advisement Burton's motion to strike. The trial court ultimately found Burton guilty of grand larceny of Dabney's coins.

### III. Analysis

#### A. LAY TESTIMONY ON THE VALUE OF THE STOLEN PROPERTY

Burton argues on appeal that Jesse Dabney's "testimony as to the value of the coins . . . was speculative and therefore inadmissible." Appellant's Br. at 5. He contends that since no evidence established "*when* [Jesse] put those [coin] jars in the floor," it is "possible the jars had been partially or completely emptied" well before Jesse discovered and reported them stolen. Id.

---

[1] He was also charged with two counts of breaking and entering, another count of grand larceny, one count of larceny of a firearm, and one count of assaulting a police officer. Only the grand larceny charge related to the taking of Richard Dabney's coins is before us on appeal.

at 5-6.  Accordingly, Burton concludes, the trial court abused its discretion by admitting Jesse Dabney's speculative testimony on the coins' value.

On appeal, admissibility of evidence arguments are governed by two principles.  "First, we do not review such decisions *de novo*."  Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).  Trial courts are given broad discretion over the admissibility of evidence, and its decisions will not be disturbed on appeal absent an abuse of discretion.  See Michels v. Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006); Seaton v. Commonwealth, 42 Va. App. 739, 752, 595 S.E.2d 9, 15 (2004).  Only when "'reasonable jurists could not differ'" do we say an abuse of discretion occurred.  Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006) (quoting Thomas, 44 Va. App. at 753, 607 S.E.2d at 743).

The second governing principle accepts that every fact "that tends to establish the probability or improbability of a fact in issue is relevant."  Va. Elec. & Power Co. v. Dungee, 258 Va. 235, 260, 520 S.E.2d 164, 179 (1999) (citation omitted).  In other words, "evidence has relevance if it 'tends to cast any light' on any material point."  Thomas, 44 Va. App. at 753, 607 S.E.2d at 743 (citing Seaton, 42 Va. App. at 752, 595 S.E.2d at 15).  The "general rule that 'the admissibility of evidence is within the discretion of the trial court and we will not reject the decision of the trial court unless we find an abuse of discretion' . . . is particularly true with respect to an appellate 'challenge to the reliability of the evidence.'"  Joyce v. Commonwealth, 56 Va. App. 646, 663 n.4, 696 S.E.2d 237, 245 n.4 (2010) (quoting Midkiff v. Commonwealth, 280 Va. 216, 219, 694 S.E.2d 576, 578 (2010)).

It is well established that "the opinion testimony of the owner of personal property is competent and admissible on the question of the value of such property, regardless of the owner's knowledge of property values."  Walls v. Commonwealth, 248 Va. 480, 482, 450 S.E.2d

363, 364 (1994). Opinion "testimony of a nonexpert, who is not the owner of the personal property in question, is [also] admissible upon the subject of property value, provided the witness possesses sufficient knowledge of the value of the property or has had ample opportunity for forming a correct opinion as to value." Id. at 483, 450 S.E.2d at 365 (citing Haynes v. Glenn, 197 Va. 746, 750, 91 S.E.2d 433, 436 (1956)); see also Kerr v. Clinchfield Coal Corp., 169 Va. 149, 155-56, 192 S.E. 741, 743 (1937). No "'special training or experience is necessary for a witness to value,'" familiarity with the property is all that is required. Id. at 155, 192 S.E. at 743 (quoting 1 Greenleaf on Evidence § 430, at 532 (16th ed. 1899)); see also Charles E. Friend, The Law of Evidence in Virginia § 17-8 (5th ed. 1999) ("Firsthand knowledge is required," for a witness to testify about value.).

Here, it is unclear who owned the coin jars: Jesse or Richard Dabney. See Oral Argument Audio at 5:30 (Mar. 29, 2011). Nonetheless, counsel stipulated Jesse had been the person who had filled the jars with coins and put them in Richard's house. Id. at 5:36. In his testimony, Jesse described the number and size of the containers, the type of coins that were housed in each, and how full each jar had been prior to the theft.[2] He testified there were two gallon-sized jars — one "three fourths" full and the other "really full" — containing quarters, dimes, and nickels, and several half-gallon jars containing pennies, nickels, and dimes. Valuation of currency, with its representative value denominated upon its face, or as here, by its color and size, is fundamentally different than valuation of any other item. By its nature, currency's valuation is not subject to injudicious estimation. Given the specific knowledge

---

[2] Burton claims on appeal "there is no basis on which to conclude Burton took possession of the coins after [as opposed to before] Richard Dabney's death, and any such conclusion would be mere speculation." Appellant's Br. at 10. Contrary to appellant's contention, Jesse Dabney testified the coins were missing shortly after he was asked "what was *different* inside the house" on May 4th as compared with May 2nd. A reasonable factfinder could conclude from this evidence that Jesse Dabney had observed the coin jars in his brother's house on May 2nd, after Richard's death, and subsequently noticed their absence on May 4th.

Dabney had about the size and contents of each container, the trial court did not abuse its discretion in permitting his valuation testimony.

B.  SUFFICIENCY OF THE EVIDENCE

Under settled principles, we review a trial court's factfinding "with the highest degree of appellate deference."  Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006).  An appellate court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original).  "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Id. (citation omitted and emphasis in original).  We are "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).  In a bench trial, a trial judge's "major role is the determination of fact, and with experience in fulfilling that role comes expertise."  Id. (citation omitted).  "If reasonable jurists could disagree about the probative force of the facts, we have no authority to substitute our views for those of the trial judge."  Campbell v. Commonwealth, 39 Va. App. 180, 186, 571 S.E.2d 906, 909 (2002).

Code § 18.2-95(ii) defines grand larceny as "simple larceny not from the person of another of goods or chattels of the value of $200 or more."  An individual commits larceny by wrongfully taking the "goods of another without the owner's consent and with the intention to permanently deprive the owner of possession of the goods."  Scott v. Commonwealth, 36 Va. App. 276, 282, 549 S.E.2d 624, 626 (2001); see also Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 763-64 (2001); Stanley v. Webber, 260 Va. 90, 96, 531 S.E.2d 311,

- 5 -

315 (2000). The value of the goods is an element of the crime that the Commonwealth must prove beyond a reasonable doubt. Walls, 248 Va. at 481, 450 S.E.2d at 364; Knight v. Commonwealth, 225 Va. 85, 88, 300 S.E.2d 600, 601 (1983); Dunn v. Commonwealth, 222 Va. 704, 705, 284 S.E.2d 792, 792 (1981). The face value of currency in circulation is prima facie evidence of its value.[3] See Wright v. Commonwealth, 196 Va. 132, 139, 82 S.E.2d 603, 607 (1954) (interpreting substantially similar statute) (citing Whalen v. Commonwealth, 90 Va. 544, 549, 19 S.E. 182, 183 (1894)); see also Code § 18.2-98; United States v. Kroesser, 731 F.2d 1509, 1517 (11th Cir. 1984) (stating face value of authentic circulating currency is its *per se* value).[4]

Burton contends the evidence was insufficient on three grounds. First, he argues no evidence proved the coins were taken without permission of the owner. Second, he claims the evidence fell short of proving the coins he cashed in at Food Lion were the same ones that went missing from the victim's house. Finally, he asserts the evidence of the coins' value was insufficient to show the missing coins were worth $200 or more.

In this case, the evidence amply supports the trial court's conclusion that the missing coins were taken without permission of the owner. It "is within the province of the [trier of fact] to determine what inferences are to be drawn from proved facts, provided the inferences are reasonably related to those facts." Beck v. Commonwealth, 2 Va. App. 170, 176, 342 S.E.2d 642, 645 (1986). Here, when Jesse Dabney went to his brother's home the first time, there was

---

[3] Evidence can nonetheless be presented to prove that money has an extrinsic value different than its redeemable value as legal tender. The true value of coins is affected both by their market value to numismatics and "the tangible (i.e. intrinsic) value of the coins' precious metal content." Sanders v. Freeman, 221 F.3d 846, 855-56 (6th Cir. 2000).

[4] While Wright, 196 Va. at 139, 82 S.E.2d at 607, addresses the face value of paper currency, the law "knows no difference between" coin and paper currency. See Thompson v. Butler, 95 U.S. 694, 696 (1878). Thus in the absence of evidence to the contrary, the face value of coin currency is prima facie evidence of its value.

no evidence of unlawful entry and the contents of the home appeared undisturbed. Richard Dabney was found deceased. When Jesse returned two days later, the house was in complete disarray. He noticed pry-bar markings on the garage door and several items missing, including a Harley Davidson motorcycle, a rifle, and the contents of several money jars. Jesse reported the stolen items to police. Considering this evidence together, the trial court reasonably concluded the coins were taken without permission of the owner, whether the owner was Jesse or Richard Dabney. The trial court could determine from Jesse's decision to file a police report that he did not give anyone permission to disturb the coins. And Richard was deceased prior to the forced entry and the coins' taking.

After establishing a larceny has occurred, "the unexplained possession of recently stolen goods permits an inference of larceny by the possessor," Winston v. Commonwealth, 26 Va. App. 746, 757, 497 S.E.2d 141, 147 (1998) (citation omitted), and "throws upon the accused the burden of accounting for that possession," Hope v. Commonwealth, 10 Va. App. 381, 385, 392 S.E.2d 830, 833 (1990) (*en banc*) (citing Fout v. Commonwealth, 199 Va. 184, 190-91, 98 S.E.2d 817, 821-22 (1957)). Standing alone, this larceny inference is sufficient to support a finding of guilt. Winston, 26 Va. App. at 757, 497 S.E.2d at 147; Lew v. Commonwealth, 20 Va. App. 353, 358, 457 S.E.2d 392, 394-95 (1995).[5]

To raise this inference, the Commonwealth must show that the goods in question match the general description of the recently stolen items. See Wright v. Commonwealth, 2 Va. App. 743, 747, 348 S.E.2d 9, 12 (1986). "When an accused is found in possession of goods of a type recently stolen, strict proof of identity of the goods is not required." Henderson v.

---

[5] "At least since 1872 Virginia juries have been instructed that the defendant's exclusive possession of recently stolen goods, if he offers no reasonable explanation, permits a presumption or inference that the defendant stole the goods." Ronald J. Bacigal, Virginia Practice: Criminal Offenses and Defenses at 424 (2008-09 ed.); see 2 Virginia Model Jury Instructions, Criminal No. 36.300 (2005).

Commonwealth, 215 Va. 811, 812-13, 213 S.E.2d 782, 783 (1975); see also Bunch v.

Commonwealth, 225 Va. 423, 437, 304 S.E.2d 271, 279 (1983) ("strict proof of identity" is not

required). In other words, it is

> "not necessary that the identity of stolen property should be
> invariably established by positive evidence. In many such cases
> identification is impracticable, and yet the circumstances may
> render it impossible to doubt the identity of the property, or to
> account for the possession of it by the accused upon any
> reasonable hypothesis consistent with his innocence."

Reese v. Commonwealth, 219 Va. 671, 673, 250 S.E.2d 345, 346 (1979) (quoting Gravely v.

Commonwealth, 86 Va. 396, 402, 10 S.E. 431, 433 (1889)).

Burton claims there is no proof the coins he traded in at Food Lion were the same coins

taken from Richard Dabney's home. The evidence shows that the very same day the coins were

discovered missing, Burton was seen with Dabney's missing motorcycle and showed up at a

Food Lion store with $385 worth of coins to cash in for paper currency. Two days later, the

remainder of Dabney's missing belongings, including his rifle and jacket, were discovered in

Burton's home. This evidence considered in tandem — namely the time frame and that Burton

had recently possessed every other item reported stolen from Dabney's home —was sufficient

for the trial court to conclude that the coins Burton cashed in at Food Lion were the same coins

taken from Dabney's home and thus were worth more than $200.

Moreover, Burton presented to the trial court in closing argument his hypothesis that the

coins he cashed in at Food Lion were not Dabney's missing coins. The trial court rejected this

theory and found Burton guilty of grand larceny. While a factfinder may not arbitrarily disregard

a reasonable doubt, whether "the hypothesis of innocence is reasonable is itself a 'question of

fact,' subject to deferential appellate review." Clanton v. Commonwealth, 53 Va. App. 561,

572-73, 673 S.E.2d 904, 910 (2009) (*en banc*) (citation omitted). "Merely because defendant's

theory of the case differs from that taken by the Commonwealth does not mean that every

reasonable hypothesis consistent with his innocence has not been excluded." Id. Thus, "the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found the incriminating evidence renders the hypothesis of innocence unreasonable." James v. Commonwealth, 53 Va. App. 671, 682, 674 S.E.2d 571, 577 (2009) (citing indirectly Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003)). Based on the evidence, the trial court was entitled to conclude Burton stole Dabney's coins and cashed them in for $385.

## IV. Conclusion

In sum, the trial court did not err in permitting a lay witness to testify about the value of coins and there is sufficient evidence to support Burton's grand larceny conviction.

Affirmed.