UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Chaney and Lorish
Argued at Virginia Beach, Virginia


GUADALUPE ZELEDON DIAZ

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 0690-21-1                       JUDGE ROBERT J. HUMPHREYS
                                                    MAY 17, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Michael E. McGinty, Judge

Ivan D. Fehrenbach (D.R. Dansby, Ltd., on brief), for appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the circuit court convicted Guadalupe Zeledon Diaz of aggravated

sexual battery, in violation of Code § 18.2-67.3(1).  On appeal, Diaz challenges the circuit court's

findings regarding the credibility of the complaining witness and the sufficiency of the evidence

proving his criminal intent.

BACKGROUND

In December 2017, E.Z. was eleven years old and living in an apartment with her mother,

father, siblings, uncle, and paternal grandfather, Diaz.  On New Year's Eve, the family was gathered

to celebrate the start of 2018.  That night, E.Z. was in her bedroom, sitting against the wall, and

playing a game on an electronic device when Diaz entered her bedroom and closed and locked the

door.  Diaz approached E.Z. and took off his belt.  He said that they needed to talk.  As Diaz sat

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

down next to E.Z., she noticed that he smelled of alcohol. Diaz touched E.Z. on her inner thighs with both hands over her clothes. E.Z. told Diaz to stop. When Diaz did not stop rubbing her thighs, E.Z. attempted to remove his hand. Diaz then moved his hand to E.Z.'s right breast and squeezed it, over her clothing. Despite E.Z.'s repeated requests to stop, Diaz continued to fondle her. After E.Z. tried to remove his hand from her breast, Diaz stood up, put his belt back on, and left the bedroom. At trial, E.Z. testified that she did not cry out to others in the apartment because she was scared. E.Z. also told no one about the incident until she told her aunt, Aracely, and her sister, Briceida, in December 2019. E.Z. also told her adult cousins, Nuria and Claudia.

At trial, E.Z. admitted on cross-examination that she originally said she was sitting on a bed, rather than on the floor, when this incident happened. She also conceded that she had a school nurse, guidance counselors, teachers, and family members that she trusted, but did not tell about the abuse. E.Z. acknowledged that she first reported a second incident of abuse, but later contacted the Commonwealth's Attorney's office and reported that her account of the second incident was not entirely accurate. A second act of abuse had occurred, she said, but she had not accurately reported the details. E.Z. conceded that her relationship with her mother was strained and that her mother did not believe her. On re-direct examination, E.Z. stated she was telling the truth, and she testified that no one told her what to say in court. She also testified that she did not want her grandfather to get into trouble because he had become a Christian and seemed like a changed person.

E.Z.'s aunt, Aracely Zeledon, testified that E.Z. cried as she told her that Diaz had been touching her. Claudia Zeledon testified that she reported the incident to police after reviewing some text messages E.Z. had sent to another cousin, Eric, that referenced the touching. Claudia testified that E.Z. had been living with her at the request of Child Protective Services since June 2020 and that E.Z. was angry with her for calling the police and "destroy[ing] her family." Claudia also

- 2 -

testified that Diaz did not live at the apartment, as E.Z. had said, but she explained that he was there "every day."

Paris Little was employed with James City County Social Services and assigned to investigate E.Z.'s allegations. Little testified that in June 2020, E.Z. reported two incidents of abuse. E.Z. told Little that during the first incident, she was on her bed,[1] looking at her phone, when Diaz came into her room, got down onto the bed with her, and rubbed her thighs and tried to touch her chest. E.Z. told her that during the second incident, Diaz entered the bedroom while she was in her bra and underwear, locked the door, and started doing "the same thing, rubbing her thigh and touching her chest." At trial, E.Z. explained that during the second incident she and her two siblings were in bed asleep when Diaz entered the room and "right when he was laying down that's when [she] felt someone touch [her] on [her] thighs again and [her] breast as well."

Child Protective Services Supervisor, Tina Perry, testified that she interviewed E.Z. on June 10, 2020. E.Z. disclosed that Diaz "came into the room that she was [in], purposefully locked the door. She was watching something on her phone at the time, he purposefully touched her thighs on top of her clothes. She kept pushing him away and he tried to touch her boobs."

After the Commonwealth concluded its case, Diaz made a motion to strike, arguing that the evidence failed to prove that he touched E.Z. with the requisite criminal intent. The circuit court denied the motion. In his closing argument, Diaz renewed his motion to strike and further argued that E.Z. was not a credible witness. The circuit court again denied Diaz's motion and found Diaz guilty of aggravated sexual battery. This appeal followed.

---

[1] James City County Police Investigator Lesa Barnett visited the apartment in June 2020 and observed makeshift beds in both bedrooms, made of pallets and blankets. The beds had no frames and were low to the ground.

ANALYSIS

A. Intent to sexually molest, arouse, or gratify

Diaz argues that the evidence could not support a finding that he acted with the intent to sexually molest, arouse, or gratify, as required by Code § 18.2-67.3. We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

We conduct our review of this case through the lens of these familiar principles, and we begin with the plain wording of the relevant statutes. "An accused is guilty of aggravated sexual battery if he or she sexually abuses the complaining witness, and . . . [t]he complaining witness is less than 13 years of age." Code § 18.2-67.3(A)(1). "'Sexual abuse' means an act committed with the intent to sexually molest, arouse, or gratify any person, where . . . [t]he accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts." Code § 18.2-67.10(6)(a). "'Intimate parts' means the genitalia, anus, groin, breast, or buttocks of any person." Code § 18.2-67.10(2).

"Intent is the purpose formed in a person's mind and may be, and frequently is, shown by the circumstances. It is a state of mind which may be proved by a person's conduct or by his statements." *Mason v. Commonwealth*, 49 Va. App. 39, 45 (2006) *(quoting Haywood v. Commonwealth*, 20 Va. App. 562, 565 (1995)). "Whether the required intent exists is generally a question for the trier of fact." *Id.* (quoting *Crawley v. Commonwealth*, 25 Va. App. 768, 773 (1997)). "It 'is within the province of the [trier of fact] to determine what inferences are to be drawn from proved facts, provided the inferences are reasonably related to those facts.'" *Burton v. Commonwealth*, 58 Va. App. 274, 283 (2011) (alteration in original) (quoting *Beck v. Commonwealth*, 2 Va. App. 170, 176 (1986)).

In this case, E.Z.'s testimony of the incident, which was believed by the circuit court, sufficiently proved the elements of the crime beyond all reasonable doubt. E.Z. testified that she was alone in her bedroom on the night of the offense, when Diaz, her grandfather, entered the room, closed and locked the door, removed his belt, and said that they needed to talk. He then sat next to E.Z. and began to rub her upper thighs. When she tried to remove his hand, Diaz touched her breast. He did not stop despite E.Z.'s repeated requests. Diaz smelled of alcohol, and E.Z. was eleven years old. These facts do not support Diaz's assertion that his actions were either "misguided playfulness," or a "drunken threat of corporal punishment." He did not do or say anything to suggest he was there to punish E.Z., nor did he act with lighthearted grandfatherly affection. Rather, Diaz seized on E.Z.'s seclusion in her bedroom and locked the door to avoid detection. He removed his belt and then rubbed E.Z.'s upper thighs and stroked her intimate parts. These facts, taken in their entirety and with all reasonable inferences drawn from them, support the conclusion that Diaz sexually abused a complaining witness who was less than thirteen years old.

Thus, a reasonable factfinder could conclude from Diaz's conduct that he touched E.Z. in order to "sexually molest" her and to arouse or gratify himself. There is no innocent explanation for touching E.Z.'s body in the manner he did. "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Williams v. Commonwealth*, 71 Va. App. 462, 485 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 531 (2017)). In this case, the facts support the circuit court's rejection of Diaz's claim that he did not act with the requisite criminal intent.

## B. Credibility of the complaining witness

Although Diaz acknowledges that the testimony of one witness can support a conviction, he asserts that E.Z.'s testimony was inherently incredible as a matter of law and that her "story should not have been believed." Accordingly, Diaz argues, without the testimony of E.Z., the evidence was insufficient as a matter of law to prove that he committed aggravated sexual battery.

"Determining the 'credibility of the witnesses and the weight of the evidence' are tasks left 'solely [to] the trier of fact' unless those determinations are 'plainly wrong or without evidence to support [them].'" *Nelson v. Commonwealth*, 73 Va. App. 617, 622 (2021) (alterations in original) (quoting *Wactor v. Commonwealth*, 38 Va. App. 375, 380 (2002)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Robinson v. Commonwealth*, 70 Va. App. 509, 513 (2019) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).[2] "The fact finder is not required to believe all aspects of the testimony of a witness." *Parham v. Commonwealth*, 64 Va. App. 560, 565 (2015). "Instead, it may 'accept the parts of a witness' testimony it finds believable and reject other parts as

---

[2] Indeed, in this case, the circuit court expressly weighed E.Z.'s credibility and carefully considered all of the evidence supporting and attacking her credibility.

implausible.'" *Id.* (quoting *Moyer v. Commonwealth*, 33 Va. App. 8, 28 (2000) (*en banc*)). "The conclusions of the fact finder on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness'] . . . testimony was inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Moyer*, 33 Va. App. at 28 (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991)).

To that end, Diaz contends that E.Z.'s testimony could not be believed as a matter of law. Relying on the Virginia Supreme Court's decision in *Willis v. Commonwealth*, 218 Va. 560 (1977), Diaz argues that because E.Z.'s testimony was "uncorroborated" and "replete with contradictions, inconsistencies and impossibilities" the circuit court erred in accepting her testimony as true.

In *Willis*, the Supreme Court found that "the testimony, wholly uncorroborated, of the [witness] is replete with contradictions and inconsistencies." *Willis*, 218 Va. at 563. The complaining witness, an adult, in *Willis* contradicted herself as to which defendant allegedly assaulted her first, whether the assault took place upstairs or downstairs, and whether she was fully clothed before the assault or whether she was naked. *Id.* at 562-63. The Court explained that "[w]hen her testimony is considered along with her unexplained failure to report the alleged rapes for nearly a month, and her attempt to withdraw the warrants that had been secured, her story is incredible as a matter of law." *Id.* at 563-64. The Supreme Court concluded that, because the victim's testimony was so "inherently incredible or contrary to human experience or to usual behavior," the "defendants' guilt has not been established beyond a reasonable doubt" and reversed the convictions. *Id.* at 564.

This case is easily distinguished from *Willis*. Unlike the complaining witness in *Willis*, E.Z. was always consistent about the key details of her abuse. She repeatedly explained that Diaz entered the bedroom, closed and locked the door, removed his belt, and, smelling of

- 7 -

alcohol, rubbed her upper thighs and breast. The inconsistencies in E.Z.'s testimony were collateral to the core of her story. That she testified at the preliminary hearing that she was on a phone, rather than on her tablet, is immaterial. Likewise, it is also of no moment that she first stated she was sitting on the bed, but later stated she was on the floor or on a pallet on some blankets.[3] Unlike the complaining witness in *Willis*, E.Z. was always clear as to the order of the abuse, who abused her, and where the abuse happened. The inconsistencies in E.Z.'s story do not compare to those of the complaining witness in *Willis*.

Further, unlike the complaining witness in *Willis*, E.Z.'s delay in reporting the abuse is not "unexplained." E.Z. explained her delay in reporting the incident, stating that she was scared. Indeed, Aracely testified that E.Z. was sad and started crying when relaying the details of the incident to her in December 2019, over a year after the incident occurred. Unlike *Willis*, where the victim was sixty-five years old, E.Z. was only eleven years old at the time of the incident and she saw Diaz every day afterward. *See Woodard v. Commonwealth*, 19 Va. App. 24, 28 (1994) (holding that the thirteen-year-old victim's two-month delay in reporting her rape "is explained by and completely consistent with the all too common circumstances surrounding sexual assault on minors—fear of disbelief by others and threat of further harm from the assailant"). An eleven year old's hesitation to disclose sexual abuse at the hands of a household relative is not "contrary to human experience."

As for Diaz's argument that E.Z.'s testimony was uncorroborated and thus unbelievable, we note that this Court has been clear that "[b]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished." *Poole v. Commonwealth*, 73

---

[3] Investigator Barnett explained that the bedrooms had makeshift beds made up of pallets that were close to the ground and covered in blankets, explaining the change in E.Z.'s terminology.

Va. App. 357, 369 (2021) (quoting *Wilson v. Commonwealth*, 46 Va. App. 73, 88 (2005)). E.Z.'s testimony *was* corroborated in part by the statements she made to family members and Child Protective Services. "[U]nder a rule unique to [sexual assault] trials, evidence of an out-of-court complaint by a victim is admissible, not as independent evidence of the offense, but as *corroboration*." *Wilson*, 46 Va. App. at 83 (emphasis added) (quoting *Lindsey v. Commonwealth*, 22 Va. App. 11, 14 (1996)). E.Z. disclosed the abuse to her aunt, Aracely, and her sister, Briceida. She later told her adult cousins, Nuria and Claudia, and she sent text messages about the second incident to her cousin, Eric. E.Z. also provided the same report to two separate Child Protective Services workers. E.Z. testified that she was not pressured by anyone and that no one told her what to say in court.

Diaz emphasizes that E.Z. had several motives to fabricate her story. The first alleged motive is that E.Z.'s sister received a lot of attention for bringing similar charges against their uncle. The second alleged motive is that E.Z. wanted to live with Claudia because rules are more relaxed. The evidence for these alleged motives is nearly non-existent.[4] Yet even if E.Z. had motives to lie, the circuit court had the opportunity to consider them when it weighed her testimony and they do not render her testimony inherently incredible. *See Kelley v. Commonwealth*, 69 Va. App. 617, 627 (2019) (noting that a motive to lie does not make a witness' testimony inherently incredible).

Finally, Diaz stresses the fact that E.Z. was at first untruthful about the facts of the second incident and he highlights the fact that E.Z. testified Diaz lived at her apartment, when "other competent" evidence showed he did not. Nonetheless, the circuit court was aware of these issues and still found E.Z. credible. "[T]he testimony of a single witness, if found credible by the trial court and not found inherently incredible by this Court, is sufficient to support a conviction."

---

[4] Nothing in the record suggests that E.Z. sought the attention her sister received, and the record shows that E.Z. was upset with Claudia for reporting the abuse and wanted to return to her mother's home.

*McCary v. Commonwealth*, 36 Va. App. 27, 41 (2001). The circuit court considered all of these allegations and still concluded E.Z. was a credible witness. The record supports the circuit court's credibility determination and, thus, we do not disturb that finding here. For these reasons, given our deferential standard of review and the legal principles guiding our analysis, we hold that the circuit court did not err in accepting E.Z.'s testimony as true.[5]

Because the record supports the circuit court's finding that Diaz touched E.Z.'s intimate parts with the intent to sexually molest, arouse, or gratify, the circuit court did not err in finding Diaz guilty of aggravated sexual battery.

## CONCLUSION

The evidence was sufficient to support the circuit court's finding that Diaz acted with the requisite intent. Furthermore, the circuit court's resolution of the conflicts and inconsistencies in E.Z.'s testimony is supported by the record and not plainly wrong or without evidence to support it. Thus, the circuit court did not err in finding that E.Z. was a credible witness. Accordingly, we affirm the conviction.

*Affirmed.*

---

[5] On brief, Diaz argues that E.Z.'s "uncorroborated allegations demand special review" and that our "deference" to the trial court "must not be a rubber stamp." He suggests that this Court, rather than the trial court, "is actually in the best position" to assess E.Z.'s credibility. While we agree it is our duty to carefully review the record for trial error, we decline the invitation to ignore the longstanding legal principles governing the deference we give the trial court in resolving witness credibility. "Determining the credibility of witnesses . . . is within the exclusive province of the [factfinder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). *See also Robinson*, 70 Va. App. at 516-17 (overruling *Johnson v. Commonwealth*, 5 Va. App. 520 (1988), in relevant part for "fail[ing] to apply the appropriate standard of review giving due deference to the fact finder").